CASE 58.—ACTION BY FULTON, GORDON AND OTHERS AGAINST THE CITY OF LOUISVILLE.—May 26, 1910.

# Gordon, &c. v. City of Louisville.

Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

SAMUEL B. KIRBY, Judge.

Judgment for defendant, plaintiffs appeal.—Affirmed.

1. Licenses—Occupation Tax — Classification.—Municipalities may, by exacting licenses, tax persons in a particular business, where the business is so easily identified that a classification may be made that will separate it from other classes, and hence an ordinance exacting a license from merchandise brokers is valid.

2. Licenses—Method of Imposition.—The imposition of license taxes based upon three theories is recognized as valid: First, a uniform tax upon all persons engaged in the same business, without reference to the amount of business done; second, the levy of a uniform tax on the volume of business done without increasing it in the proportion that the business increases; and, third, the division of a general class into separate classes, according to the volume of business done, and the imposition of a different tax upon each division into which the class is divided.

3. Licenses—Occupation Tax—Validity of Ordinance.—An ordinance dividing those engaged in the business of merchandise brokers into classes of those doing business amounting to not over $200,000, those doing business amounting to from $200,000 to $300,000, and those doing $300,000 worth or over, and grading the amount of the license accordingly at $25, $35, and $50, was not unreasonable, and not objectionable for want of uniformity.

R. A. McDOWELL for appellants.

CLAYTON B. BLAKEY, ELMER C. UNDERWOOD and CLEM W. HUGGINS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The only question in this case is the validity of an ordinance of the city of Louisville reading:

"Section 1. That hereafter the following licenses shall be paid into the sinking fund of the city of Louisville for the purposes of the sinking fund, for doing the businesses, following the callings, occupations and professions, or exhibiting the articles hereinafter named, in the city of Louisville.  * * *"

Sec. 21.  Every person, firm or corporation engaged in the business of buying, selling or negotiating the purchase or sale of goods, wares and merchandise to merchants or dealers, shall be deemed a merchandise broker, and shall pay an annual license as follows:  Merchandise brokers whose business amounts to $300,000 per annum shall pay a license of $50.00 per year; merchandise brokers whose business amounts to more than $200,000 and does not exceed $300,000 per annum shall pay a license of $35 per year; merchandise brokers whose business does not exceed $200,000 per annum shall pay a license tax of $25.00 per year."

The appellants, who are merchandise brokers, insist that this ordinance is invalid because it selects a class and then divides it into subdivisions in an arbitrary and unreasonable manner, thereby imposing upon each class a tax not equal or uniform and not based upon any reasonable principle of classification.

There is a class of persons engaged in the business known as "merchandise brokers," and this business is as distinct from other classes of business as is the hardware merchant from the dry goods merchant, or the dealer in grain from the dealer

in boots and shoes. Therefore, the merchandise broker, being engaged in a business easily distinguishable from any other business, it was competent for the city council to select as special objects of taxation persons engaged in this particular business. We have frequently upheld the validity of ordinances selecting classes of persons for taxation distinct from other classes; and, when the business is so easily identified that a classification may be made that will separate it from other classes, there is no reason why municipal authorities should be denied the right to make the selection. Hager v. Walker, 128 Ky. 1, 107 S. W. 254, 32 Ky. Law Rep. 748, 15 L. R. A. (N. S.) 195; City of Louisville v. Sagalowski, 124 S. W. 339; Schuster v. Louisville, 124 Ky. 189, 89 S. W. 689, 28 Ky. Law Rep. 588; Brown-Forman Co. v. Commonwealth, 125 Ky. 402, 101 S. W. 321, 30 Ky. Law Rep. 793; Strater Bros. v. Commonwealth, 117 Ky. 604, 78 S. W. 871, 25 Ky. Law Rep. 1717.

But, assuming that the council had authority to select merchandise brokers as a class for taxation, it is insisted that when so selected the tax imposed should be fixed upon such a basis as would make it uniform upon all persons engaged in the business so selected and classified for taxation. Having this proposition in mind, the argument is made that the tax imposed by the ordinance upon merchandise brokers is not equal or uniform, as this class of persons was again arbitrarily divided into different classes and a different license tax imposed upon each class. As illustrating the inequality and lack of uniformity in the method employed in taxing the three classes into which merchandise brokers are divided, it is pointed out that under the ordinance the broker

whose business amount to $199,000 a year must pay
a license fee of $25 per annum, while a broker whose
business amounts to only $201,000 a year will pay
a license tax of $35 per annum; that the broker
whose business amounts to $299,000 a year only pays
a license tax of $35, while the broker whose business
amounts to $301,000 must pay $50 per annum. It
is again shown that the merchandise broker whose
sales amount to $1,000,000 per year is only required
to pay 5 cents on each $1,000, while the broker
whose sales amount to $300,000 pays 11 2-3 cents on
each $1,000, and the broker whose sales amount to
$100,000 and no more must pay at the rate of 25
cents on each $1,000.

Inequalities exist in every scheme of license taxa-
tion that has ever been devised. It is not possible
to invent a system that will operate with perfect
equality upon every person upon whom the tax is
imposed. This condition is recognized everywhere
and by everybody. If a uniform tax was levied upon
every person engaged in a certain class of business,
as for instance $25 per annum upon each attorney at
law, the result would be that the attorney whose in-
come amounted to $10,000 a year would pay the
same license fee as the attorney whose income was
$500 a year. And so if the tax levied upon dry
goods merchants was graded according to the amount
of business done by each, without distinction as to
the volume, it would be equally impracticable to ad-
just it with absolute fairness, because one merchant
whose business amounted to $100,000 a year might
be required to expend three times as much in secur-
ing this volume of business as his neighbor whose
sales amounted to an equal sum. Or, if the tax, as
in Strater Bros. Tobacco W. C. v. Commonwealth,

117 Ky. 604, 78 S. W. 871, 25 Ky. Law Rep. 1717, was fixed at $1 on each $1,000 of the marketable value of the manufactured product until the value reached $100,000, and 50 cents on each $1,000 of the marketable value in excess of the first $100,000, the manufacturer who produced $100,000 worth of goods would pay $100, and the manufacturer who produced $300,000 in value would only pay $200. Or, in other words, the manufacturer whose product amounted to $100,000 would pay $1 on the $1,000, while the one whose product amounted to $300,000 would only pay 66 2-3 cents on each $1,000. Illustrations of this character might be multiplied without number, but the ones noted will serve to illustrate that the problem of working out equality in taxation is one that has never been solved. Acknowledging the ex-istence of this remediless condition, the efforts of courts have been to relieve it as much as possible by requiring taxing authorities to make as little discrimination as conditions will permit. In this state we recognize as valid the imposition of license taxes based upon three theories; one being a uniform tax upon all persons engaged in the same business without any reference to the amount of business done, another that levies a uniform tax upon the volume of business done without changing it in the proportion that the business increases, the tax being the same whether there is realized from the business $1,000 or $100,000 per annum. And yet another is the division of a general class, as in this case and the Strater case into separate classes ac-cording to the volume of business done, and the im-position of a different tax upon each division into which the class is divided. This last-mentioned scheme is, of course, open, as are all the others, to

the objection of inequality; but the inequality is not any greater under this system than it is under the others. Of course, in selecting the line that divides the general class into subdivisions and taxing persons or property coming within the provisions of each subdivision a different rate, the divisional lines are necessarily arbitrarily selected by the authorities having power to enact the tax laws as is the tax that each division shall pay. But this fact alone is not sufficient to condemn the act as an unwarranted exercise of legislative authority, if the tax levied upon each class is reasonable, and the lines dividing the class appear to have been made with reasonable regard for the rights of the persons engaged in the business that is thus divided.

We are unable to perceive any distinction between the ordinance here involved and the act before the court in the Strater case. In each instance the classes taxed were arbitrarily divided into divisions, and a different tax levied upon those engaged in each division. It has been frequently held, and is recognized as the rule in this state, that the classification of persons and things for taxation must have some reasonable or natural basis upon which to stand. Or, to put it in another way, there must be some reason for the classification as well as for the division of those engaged in a particular line of business into more than one class. Gulf, Colorado, Santa Fe Ry. v. Ellis, 165 U. S. 150, 17 Sup. Ct. 255, 41 L. Ed. 666. But when we come to apply this principle, it is apparent that no unfailing standard can be erected by which to measure the justice or the reasonableness of the classification or the tax, and so it must be left in the first instance to the discretion and good judgment of the legislative bodies who make

the classification and impose the tax, to be finally tested by the judicial tribunals before whom the question may come, and who should give due weight and consideration to the action taken by the bodies making the classification and imposing the tax. Having this view of the manner in which the classification here involved should be looked at, it seems to us not to have been made arbitrarily or from mere whim or caprice and without regard to its reasonableness or its justice. The first object in the minds of the legislative body was to tax all merchandise brokers. As a secondary consideration, there came up the propriety of dividing them into classes, based upon the volume of business done, and this classification was manifestly suggested by the fact that the broker who did a small business should not be taxed as much as the one who did a large business. And so the class was divided into divisions, and a different but not unreasonable tax imposed upon each division. The requirement that the broker who does a large business should be required to pay a heavier tax than the broker who does a small business is neither unreasonable nor unjust. And to divide them into classes based on the volume of business done did not in our opinion violate the rule of uniformity or reasonableness that has often been applied in cases like this.

Wherefore the judgment of the lower court is affirmed.