## Loges v. City of Louisville.

(Decided December 16, 1910.)

### Appeal from Jefferson Circuit Court. (Criminal Division).

Municipalities—Ordinances—Licenses on Bill Posters—Failure to Obtain—Penalty.—Appellant was fined in the city court of Louisville for a violation of what is commonly known as the Bill Posters' Ordinance requiring them to have a license before doing business in the city. Held—The word "non-resident" as used in the ordinance means one who does not live within the corporate limits of the city of Louisville. This is a wise and necessary provision; without it, persons who lived without the city could by sending their agents into the city carry on the business for which the payment of a license is required without the

possibility of the ordinance being enforced against them.   To avoid this sort of fraud, the ordinance provides that the agent of the non-resident proprietor if he carries on the business within the city shall be responsible in the same manner as if he were the proprietor.   The appellant must be presumed to know the law.

ARTHUR BENSINGER, for appellant.

JACOB SOLINGER and CLEM W. HUGGINS, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE BARKER—Affirming.

The appellant was fined in the city court of Louisville for a violation of subsection 10 of "An ordinance Providing for certain Licenses, the Fees therefor to be paid into the Sinking Fund of the City of Louisville." This subsection is commonly known as the Bill Posters' License, and is in words and figures as follows:

"Every person, firm or corporation who posts, tacks, paints or places bills or advertisement, in or upon houses, walls, fences or stands erected for the purpose, as a business, shall pay a license of one hundred and twenty-five dollars per year.   This one hundred and twenty-five dollars license fee shall entitle the person, firm or corporation so licensed to distribute bills, dodgers, circulars, pamphlets or other printed matter without any additional license therefor."

The evidence in this case consists in the main of the stipulations of counsel, which are as follows:

"1.   The Standard Time Advertising Company is a corporation organized under the laws of Illinois with its office at Chicago.   Said corporation posts and paints advertisements on sign boards attached to walls in the center of which board there is a Western Union time-clock, around which is painted the advertisements, and upon houses and other places as a business.   The advertisements are painted and repainted from time to time from which source the Standard Time Advertising Company enjoys a continuous income.

"2.   The defendant, John Loges, was employed at the time of his arrest by said corporation as a painter.

"3.   It is stipulated that neither the Standard Time Advertising Company nor John Loges had at any time any license issued by the Commissioners of the Sinking Fund or by the City of Louisville.

"4.   Prior to August, 1905, the Standard Time Advertising Company made a contract with the United Cigar Manufacturing Company of New York, to make, deliver and post in the city of Louisville, on the side of certain houses at different locations, eleven advertising signs.

"5.   The eleven signs were painted and completed in the city of Chicago and shipped to the city of Louisville and posted by said Standard Time Advertising Company on the side of houses in the city of Louisville, and facing the streets of the city of Louisville, pursuant to the contract aforesaid.   The signs thus posted consisted of tin nailed on a wooden frame and painted thereon were advertisements, advertising either the Owl Cigar or the Burns Cigar.   In the center of each sign was a time clock, operated by the Western Union Telegraph Company.

"Said Standard Time Advertising Company had no license from the city of Louisville when it thus posted said signs.   Said signs were thus posted on or about the —— day of August, 1905, but the locations thereof have been changed from time to time and the advertisements thereon changed.

"6.   On the —— day of February, 1910, the defendant, James Loges, came to the city of Louisville for the purpose of repainting the eleven signs aforesaid, and for no other purpose.   The defendant is a painter by trade, employed by the Standard Time Advertising Company to go from city to city to repair and repaint the signs put up by said corporation.

"7.   The defendant when arrested pursuant to warrant No. ——, was engaged on the 14th of February, 1910, in repainting one of the eleven signs mentioned above.   He repainted one sign entirely, producing the same advertisement as appeared before on said board. He repainted another sign, painting out a Burns Cigar advertisement and painting thereon instead an Owl Cigar advertisement.

'8.   On the 18th day of February, 1910, when arrested pursuant to warrant No. ——, defendant was engaged in repainting another sign and was just commencing said work.

"Said repainting was not simply touching up the old sign, but said defendant repainted the entire sign, including all lettering and all advertising around the let-

tering of said sign. Said defendant's purpose was in accordance with his orders from said Standard Time Advertising Company to entirely repaint four of said eleven signs which contained advertisements of the Burns Cigar.

"9. After the second arrest, the defendant abandoned his work, leaving the nine other signs untouched.

"About one year ago, to-wit, on or about the —— day of February, 1909, the defendant, John Loges, as employe of the Standard Time Advertising Company, came to Louisville for substantially the same purpose for which he came in 1910, and at said time both said defendant and said company were engaged in substantially the same business as in 1910. At said time, to-wit, in 1909, said defendant, John Loges, did repaint all of said eleven signs in the city of Louisville, painting some Owl and some Burns on the eleven clock boards aforesaid, and moved a board, with clock and advertisement, from one location and posted same on a wall in another place in said city.

"10. At all of said times neither the Standard Time Advertising Co. nor the defendant, John Loges, had an office in the city of Louisville or solicited in said city or contracted in said city to paint advertisements or post bills. All of such soliciting and making of contracts for the putting up of the signs originally was performed at the home office of the company in Chicago, Ill., and the acts carrying out said contract with the United Cigar Manufacturing Company were performed in the city of Louisville, as aforesaid. And the defendant has never held himself out as being engaged in painting signs as a business and has never solicited business or offered to contract to paint any advertisements in the city of Louisville or elsewhere, but confined his work to the repainting of the signs aforesaid.

"Leases and privileges of the wall spaces in the city of Louisville for the posting of these advertisements were secured by one Max Wolf and Henry Straus, in their names for the benefit and were assigned to the Standard Time Advertising Company."

There is no doubt that the Standard Time Advertising Company, whose agent the appellant was, falls within the purview of the ordinance, and that it should pay the license required. The ordinance does not unjustly or unduly discriminate between persons and corporations

engaged in the sign or advertising business. We think it applies only to those who are in the business of advertising the goods and wares of other people. It is a matter of common knowledge that there are firms and corporations and individuals engaged in the business of advertising, and these the ordinance requires to pay a license. The business of advertising is made available and profitable by reason of the existence of the city and its numerous inhabitants. It is necessary that the city should have funds by which its government is carried on, and the safety, health and happiness of its citizens protected; and it is only fair that every person who receives the advantages of the city government should contribute to its support. We have often held that a license ordinance is not discriminatory if it bears equally and justly upon all of a given class. The ordinance involved herein bears only upon those engaged in bill posting or other mode of advertising in the city of Louisville. It is as just and fair as the ordinance which requires lawyers, doctors or merchants to pay a license. We are unable to perceive that it is discriminatory in any respect.

The appellant was the agent of the Standard Time Advertising Company in Louisville. His business was to paint signs for his employer, and to keep them in good condition during the period they were to be maintained. Section 3014, Ky. Stats., in regard to license taxes for the state, provides: "The agent or agents of non-resident proprietors shall be civilly responsible for the license tax, and criminally responsible for carrying on business, in like manner as if they were proprietors." This section is reproduced in the ordinance and made a part of it for the purpose of enforcing the ordinance against non-resident persons doing business in the city. As a part of the ordinance, this language applies to every person, firm or corporation outside of the city of Louisville. The word non-resident, as used in the ordinance, means one who does not live within the corporate limits of the city of Louisville; it applies to every person in Kentucky outside of the city limits. It is a wise and necessary provision; without it, persons who lived without the city could, by sending their agents into the city, carry on the business for which the payment of a license is required, without the possibility of the ordinance being enforced against them. To avoid this sort of fraud, the ordinance provides that the agent of the non-resident proprietor, if he carries on the business within the city,

shall be responsible in the same manner as if he were the proprietor. The appellant must be assumed to have known the existence of the ordinance; in other words, he is presumed to have known the law. When he came to Louisville to carry on the business of his employer, he knew that under the ordinance he would be held civilly responsible for the license, and criminally responsible for a violation of the ordinance.

It seems to us that the judgment of the lower court is based upon sound principles. and it is therefore affirmed.