## City of Louisville et al. v. Churchill Downs.
### (Decided May 5, 1936.)

340

BAILEY P. WOOTTON, former Attorney General; S. H. Brown, former Assistant Attorney General, and B. M. VINCENT, Attorney General, for appellants.

CARROLL & McELWAIN, JOHN S. MILLIKEN and MILLIKEN & HANDMAKER for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming in part and reversing in part.

The General Assembly at its 1932 session, amending and re-enacting a previous law, provided that a person, firm, association, or corporation engaged in the business of conducting a race track shall pay a stipulated sum each day upon which races are run as a

license tax. Chapter 153, Acts of 1932 (section 4223b-1 et seq., Kentucky Statutes, 1933 Supplement).

The appellee, Churchill Downs, Inc., conducts a race track in Louisville and under the provisions of the foregoing act paid $2,500 a day license. It brought this suit for a declaration of rights in relation to that act and the Gross Receipts Tax Law of 1934, chapter 25, Acts of Extra Session 1934 (Ky. St. Supp. 1934, sec. 4281v-1 et seq.). The consideration of an ordinance of the city of Louisville levying a license tax on race tracks and the operation of betting devices previously enacted, which became ineffective by the terms of the act of 1932, above outlined, was also asked. Churchill Downs and the City of Louisville take the position that the Gross Receipts Act of 1934 repealed the act of 1932. The state tax commission and the auditor of public accounts take the position that it is supplementary to the 1932 act, and lays an additional tax. They also contend that the tax should be paid upon the gross sums bet or passing through the pari mutuel machines, and not on the portion taken out by the proprietor only. Churchill Downs challenges this construction of the statute.

The chancellor declared that since the act of 1934 subjects the owner of the race track to the payment of a license or excise tax of 3 per cent. of its gross receipts accruing from its constituent activities, including the betting machines, the act superseded and repealed the act of 1932. The judgment also declares that the tax is payable only on the amount received by Churchill Downs in consideration of the operation of the betting machines, which amounts to 10 per cent. of the total pool. There was no declaration respecting the city ordinance. The judgment is before us for review.

Although the Gross Receipts Tax of 1934 has been repealed since this appeal was filed, the case is not moot, for in any event the amount payable during the life of the law is at issue.

The act of 1932 imposed a license upon the business of conducting a race track. It further provides:

"The license tax herein imposed shall be in lieu of all other license, income, excise, special

or franchise tax to the State of Kentucky, or any County, City, Town, Municipality or other political subdivision thereof; and no County, City, Town, Municipality or other political subdivision of the State of Kentucky shall be authorized or empowered to levy or impose any license, income, excise, special or franchise tax on any such person, firm, association, or corporation engaged in the business of conducting a race track at which races are run for purses or prizes under the jurisdiction of the State Racing Commission, or on the operation or maintenance of any pari-mutuel machine or similar device, or on the sale of any commodity or merchandising during the running of races thereon or at any such race tracks by any such person, firm, association, or corporation." Ky. Stats. Supp. 1933, sec. 4223b-3.

In so far as the act of 1934 related to gross receipts from the sale of merchandise, it was not a tax on the business of selling, but a tax on the purchases, the seller being the agent of the state to effect the collection. City of Covington v. State Tax Commission, 257 Ky. 84, 77 S. W. (2d) 386. Section 2 of the act (section 4281v-2, Kentucky Statutes, 1934 Supplement) declared expressly that "places of amusement and/or entertainment" within the terms of the act embraced "race courses," and that as applied to such place of amusement or entertainment "gross receipts" should be construed to mean the amount received "in consideration of admissions, operation of machines, exercise of privileges granted for a charge, rentals on property, advertising by the said places of amusement and/or entertainment, or other accounts received by said places, regardless of form and regardless of whether or not enumerated in this paragraph and whether or not similar to those enumerated." Section 4281v-4 of the Kentucky Stautes, 1934 Supplement, is as follows:

"An excise tax is hereby imposed on every person operating a place of amusement and/or entertainment equal to three per centum (3%) of the gross receipts derived from the operation of said place or places of amusement and/or entertainment, and every person operating a place of amusement and/or entertainment is required

to collect a tax from the purchaser of the tickets of admission and/or account to the State of Kentucky for such tax, in the manner provided in this act."

It is manifest that in so far as the tax on admissions is concerned there is no conflict between this act and the act of 1932, for, as is agreed by all, this was no additional tax imposed on the proprietor of the race course, for it was collected from the patron. It will be observed, however, that in respect of "gross receipts derived from the operation of said place or places of amusement and/or entertainment," other than from admissions, there is no authority granted to collect from customers or patrons. Of such are those who patronize the betting machines, or who pay rental for stables or other property, or purchase concessions, such as advertising and broadcasting rights. In fact, such taxes were borne by the appellee, Churchill Downs. The case, therefore, narrows to the question as to what effect is to be given this particular part of the 1934 act in its relation to the 1932 act.

It will be observed that the act of 1932, as quoted above, places the daily license tax upon the business of conducting a race track, and declares that it shall be "in lieu of all other license, income, excise, special or franchise tax to the State" or any subdivision thereof. It then prohibits any subordinate taxing district from imposing a tax on such business, or, further, upon the operation or maintenance of pari mutuel machines or similar devices, or the sale of any commodity of merchandise at such race courses. While, of course, the Legislature could not bar further legislation upon the subject, it is perhaps worthy of notice that the act made no specific promise or contained no provision that the state would not impose a tax upon such operations.

The act of 1934 declared generally that "all laws or parts of laws in conflict with this act are hereby repealed to the extent of such conflict." Ky. St. Supp. 1934, sec. 4281v-18. It is expressly declared, however, that it was not the purpose to repeal what is denominated the "Gross Sales Act of 1930." The argument is made by the appellee that such specific reference and the failure to declare that the gross receipts tax should

be in addition to any other excise tax indicate a legislative intent to substitute it for the act of 1932. It also invokes the rule that in construing tax statutes the presumption is against the intention of the Legislature to impose multiple or duplicate taxation on the same privilege or occupation. See Commonwealth v. Walsh's Trustee, 133 Ky. 103, 117 S. W. 398; Merchants Ice & Cold Storage Co. v. Commonwealth, 154 Ky. 452, 157 S. W. 717; Campbell County v. City of Newport, 174 Ky. 712, 193 S. W. 1, L R A 1917D, 791; Greene v. E. H. Taylor, Jr., & Sons, 184 Ky. 739, 212 S. W. 925.

It may be suggested in relation to the matter of presumptive intention that there is a correlative rule, which often, as here, becomes a countervailing rule, that repeal by implication is not favored; that it is the duty of the courts if possible so to construe acts that both shall be operative; and that there must appear an intention to nullify the first act, or the terms of the later act must be so repugnant to those of the former as to be impossible of administration. Schultz v. Ohio County, 226 Ky. 633, 11 S. W. (2d) 702.

There is no duplication. It is an additional tax. The first is a license to do business. The second is purely an excise. While the distinction sometimes is not recognized and inexact expressions regard the two as synonyms, an excise tax is in its proper sense "something cut off from the price paid on a sale of goods as a contribution to the support of the government." State Tax Commission v. Hughes Drug Co., 219 Ky. 432, 293 S. W. 944, 945, quoting 26 R. C. L. 34. The difference was recognized and the right to impose both taxes was upheld in Shanks v. Kentucky Independent Oil Co., 225 Ky. 303, 8 S. W. (2d) 383, where the company contended that it was not liable to pay a tax on its gasoline sales under the gasoline tax act of 1924 (chapter 120, Acts 1924), since it had already paid a license for the privilege of doing business in Kentucky. It was held that the fact that the seller was required to collect from the user did not alter the essential character of the tax from an excise on the thing itself. Of closer application is Pullman Co. v. Knott, State Comptroller, 70 Fla. 9, 69 So. 703. It was there held to be within the legislative discretion to impose a tax on gross receipts from intrastate business, in addition

to a license tax as a condition precedent to a right to do such business. The act was held not to violate any provision of the Federal Constitution in Pullman Co. v. Knott, Comptroller, 235 U. S. 23, 35 S. Ct. 2, 59 L. Ed. 105.

It is quite conceivable that a race course could be conducted without the owner renting stables, selling concessions, or operating betting machines, or otherwise obtaining receipts upon which the excise provided by the act of 1934 would be imposed. Since such operations are not essential to the business, it cannot be said that a tax upon the receipts is a duplication of the license tax. Adams Express Co. v. Boldrick, 141 Ky. 111, 132 S. W. 174.

There is no conflict in these two acts in respect of the taxes imposed upon the receipts and borne by the proprietor of a race course. The conflict is only that the tax levied in 1932 ceased to be "in lieu of all other" taxes mentioned. The nature of the Gross Receipts Act is not such as to raise or imply an intention to repeal the daily license tax on the business of operating a race course. It was a general tax affecting not only every business but every person in the state. To hold that it repealed the license tax on race courses would require a similar construction in relation to every other license tax theretofore imposed on every other business or operation. Such disastrous effect was manifestly not contemplated by the Legislature.

In opposition to the contentions of the state tax commission, the trial court declared that in ascertaining the liability of Churchill Downs for the tax imposed by the Gross Receipts Act of 1934 on receipts accruing from the operation of the pari mutuel system of betting at the race course, the basis for calculation is the amount received as compensation for its service in its operation. We think it manifest that the proprietor operating such system is but a stake holder of the money wagered to the extent that it is paid to the winners. Section 2 of the act (Ky. Stats. Supp. 1934, sec. 4281v-2) defines "gross receipts" as applied to places of amusement, and specifically to race courses, inter alia, the amount received "in consideration of * * * operation of machines, exercise of privileges granted for a charge * * * or other accounts received by said places,

regardless of form and regardless of whether or not enumerated" in the section. The entire sums wagered are not received in consideration of the operation of the machines, but only 10 per cent. thereof. In Commonwealth v. Simonds, 79 Ky. 618, a French pool, or paris mutuel, is described, and the operation of the system outlined. It was held that the operator or owner of such machine by receiving a percentage certain of the pool is not guilty of gaming or betting in a technical sense, and that the ticket buyers used the machine as an aid to their betting; hence the balance of 90 per cent. of the entire sums belonged to the bettors. It is held by the proprietor as a bailee or agent abiding the event of the betting contracts legalized by sections 1328a and 1961, Kentucky Statutes. Commonwealth v. Kentucky Jockey Club, 238 Ky. 739, 38 S. W. (2d) 987. Compare section 1959, Kentucky Statutes; Martin v. Francis, 173 Ky. 529, 191 S. W. 259, L. R. A. 1918F, 966, Ann. Cas. 1918E, 289.

The judgment is reversed to the extent that it declares the daily license statute to have been repealed by the Gross Receipts Act of 1934. It is affirmed in so far as it declares the tax imposed is to be calculated upon the amount received by Churchill Downs in consideration for the operation of the betting system.

Whole court sitting.