**CITY OF LEXINGTON et al., Appellants,**

v.

**MOTEL DEVELOPERS, INC., et al., Appellees.**

Court of Appeals of Kentucky.

April 2, 1971.

Frank S. Ginocchio, Earl S. Wilson, Lexington, for appellants.

Miller, Griffin & Marks, Lexington, for appellees.

CLAY, Commissioner.

This controversy involves the constitutionality of an ordinance of the City of Lexington, enacted February 5, 1970, imposing upon hotel and motel owners, and others similarly engaged, what purports to be a "license" tax fixed at 5% of the rental charged for the occupancy of rooms. The Chancellor held the ordinance unconstitutional on two grounds. He concluded the tax was an *excise* tax which cannot be levied in view of section 181 of the Kentucky Constitution, but, if it was a *license* tax, it would violate the public policy of the state against double taxation.

For some time the city has had an ordinance imposing upon business enterprises generally an annual license tax in the amount of 1½% of the net profits of the business. The tax in question purports to levy an *additional* license tax upon those in the hotel and motel business. Insofar as pertinent here, the questioned ordinance provides:

"Section 3. On and after February 28, 1970, there is hereby imposed *a room tax* of five per cent (5%) of the *rental* for every occupancy of a suite, room or rooms, *charged* by all persons, companies, corporations and other like or similar persons, groups, or organizations doing business as Motor Courts, Motels, Hotels, Inns and like or similar accommodation businesses. Every person, association, corporation or other like or similar per-

sons engaged in the business of Motor Courts, Motels, Hotels, Inns and like or similar accommodations shall pay to the Treasurer of the City of Lexington, Kentucky, as collecting officer of said city, the tax hereinabove imposed."

"Section 7. The *license* tax imposed by this ordinance, on the trade set forth, *shall be in addition* to such other tax or taxes levied or imposed generally on all occupations, trades or professions." (Emphasis added)

This ordinance was designed to produce additional revenue for general city purposes, and it is not questioned that a license tax properly may be a revenue measure (rather than a regulatory one).

The legislature, which it is authorized to do under section 181 of the Kentucky Constitution, by KRS 92.280 and 92.281 granted cities (including Lexington) authority to impose *license* fees or taxes.[1] See City of Harrodsburg v. Devine, Ky., 418 S.W.2d 426 (1967). It has been recognized, and is here conceded, that this authority does not permit such cities to levy *excise* taxes. See City of Louisville v. Sebree, 308 Ky. 420, 214 S.W.2d 248 (1948), and George Wiedemann Brewing Co. v. City of Newport, Ky., 321 S.W.2d 404 (1959).

Our first question is whether the additional tax on hotels and motels, even though designated a "license" tax, is in essence an "excise" tax which cities cannot levy. The label is not controlling. City of Louisville v. Sebree, supra. Section 181 of the Kentucky Constitution empowers the *General Assembly* to levy "a special or excise tax", but this same section provides that such legislative body may authorize *cities* to "impose and collect license fees on * * * franchises, trades, occupations and professions". As consistently construed, the latter does not encompass "excise" taxes.

Exactly what the framers of the Constitution had in mind when they drafted sec-

1. KRS 84.190(2) also authorizes second-class cities to "license, tax and regulate" hotels and public houses.

tion 181 has caused difficulty. When the words "or a special or excise tax" (which the General Assembly was empowered to impose) were added to the section by amendment, there was no discussion of the purpose or their meaning. Debates, Constitutional Convention 1890, Vol. 2, page 2795. The word "excise" is a term of very general signification. Booth's Ex'r v. Commonwealth, 130 Ky. 88, 113 S.W. 61 (1908). In State Tax Commission v. Hughes Drug Co., 219 Ky. 432, 293 S.W. 944 (1927), the opinion quotes from Ruling Case Law the following (page 945 S.W.):

> " 'Excises, in their original sense, were something cut off from the price paid on a sale of goods, as a contribution to the support of the government. The word has, however, come to have a broader meaning and includes every form of taxation which is not a burden laid directly upon persons or property; in other words, excise includes every form of charge imposed by public authority for the purpose of raising revenue upon the performance of an act, the enjoyment of a privilege, or the engaging in an occupation.' "

We have recognized that a license tax *is* an excise tax. Shanks v. Kentucky Independent Oil Co., 225 Ky. 273, 8 S.W.2d 383, 385 (1928); Shannon v. Streckfus Steamers, 279 Ky. 649, 131 S.W.2d 833 (1939).[2] As the Chancellor aptly observed, in substance a true license tax is a permissible form of excise tax which cities may be authorized to levy under section 181 of the Kentucky Constitution. It is apparent that the drafters of the document, when in effect denying cities the right to impose an "excise" tax, were not using the term in the broad sense which would encompass a license tax, but were using it in the narrower sense to characterize a tax upon a transaction involving the sale, use or transfer of property. In City of Louisville v.

Churchill Downs, 267 Ky. 339, 102 S.W.2d 10, page 13 (1937), we said:

> " * * * an excise tax is in its proper sense 'something cut off from the price paid on a sale of goods as a contribution to the support of the government.' "

This concept was confirmed in Shanks v. Kentucky Independent Oil Co., 225 Ky. 303, 8 S.W.2d 383 (1938), and Shannon v. Streckfus Steamers, 279 Ky. 649, 131 S.W. 2d 833 (1939). It may be observed here that a sales tax is a classic example of an excise tax. Maloney Davidson Co. v. Martin, 274 Ky. 449, 118 S.W.2d 708 (1938); Commonwealth ex rel. Luckett v. City of Elizabethtown, Ky., 435 S.W.2d 78.

It is contended by the taxpayers, and the Chancellor so found, that the tax in question was not truly a license tax but was an excise tax of the kind a city may not levy. This conclusion is apparently based on the theory that the tax is a charge upon room-rental transactions, which equate with the sale of commodities. From a technical standpoint section 3 of the ordinance in question does appear to levy a tax upon the transaction of renting property. It starts out by imposing "a room tax". A rational analysis of this section, however, makes it rather clear that the tax is upon the hotel and motel owner and is simply measured by a percentage of room-rental receipts. The general license tax of the city is measured by a percentage of net income. Specifying the source of income does not necessarily convert a tax upon a business enterprise into a tax upon the transactions involved.

In City of Louisville v. Churchill Downs, 267 Ky. 339, 102 S.W.2d 10 (1937), in differentiating between a license tax and an excise tax, this court considered a significant incident of the latter was the fact that the impact of the tax was primarily upon

2. This is generally recognized in other jurisdictions. Hancock v. Singer Mfg. Co., 62 N.J.L. 289, 41 A. 846, 851, 42 L.R.A. 852 (1898); Amos v. Gunn, 84 Fla. 285, 94 So. 615, 640 (1922); Alexander Theatre Ticket Office v. United States, 2 Cir., 23 F.2d 44; Heriot v. City of Pensacola, 108 Fla. 480, 146 So. 654 (1933).

the patron or the customer. Therein the tax, equal to 3% of the gross receipts, was imposed upon persons operating places of amusement or entertainment, but the statute required its collection from the purchaser of tickets of admission. This was held to be an excise tax as distinguished from a license tax. While the tax here in question probably would be passed on to the occupants of rooms, the tax is not upon the rental transactions.

■ It may be noted that the nature of this tax is quite similar to the one questioned in Second Street Properties v. Fiscal Court of Jefferson County, Ky., 445 S.W.2d 709 (1969). Though the constitutionality of the Act involved was vigorously attacked, no contention was made that the tax was invalid as an "excise" rather than a "license" tax. While this avenue of attack may have been inadvertently overlooked, we are inclined to believe the qustion was not presented because it was lacking in merit, which comports with our view. We conclude the tax here under consideration properly may be characterized a permissible license tax which the City of Lexington could impose upon a business enterprise and is not an excise tax of the kind which cities under section 181 of the Kentucky Constitution are not empowered to levy.

This brings us to the second question presented in the form of whether the ordinance imposes invalid "double taxation". It appears necessary and proper to attempt some clarification of the problem involved. There is no constitutional prohibition against "double taxation" and we have recognized this many times. (See cases next hereinafter cited.) As a matter of history, section 181 of the Kentucky Constitution as originally proposed to the 1890 Constitutional Convention contained *a specific prohibition against double taxation.* Debates, Constitutional Convention 1890, Vol. 2, page 2373. After a lengthy discussion of what might be permissible double taxation, that prohibition was voted on and stricken. Debates, Constitutional Convention 1890, Vol. 2, page 2794.

Early in our case law the observation was made that it was "not the policy of the state to tax the same property twice as against the same owner". Cumberland Telephone & Telegraph Co. v. Hopkins, 121 Ky. 850, 90 S.W. 594, 596 (1906). Some of our later opinions apparently overlooked the fact that this observation was made in the context of section 171 of the Constitution, which requires *uniformity* of taxation. In Harco Corporation v. Martin, 271 Ky. 572, 112 S.W.2d 693, page 700 S.W. (1938), it was stated:

"There exists a judicially declared public policy to frown upon it (double taxation) and to refrain from upholding it, * * *."

Perhaps this court was somewhat presumptuous in attempting to develop a *judicial public policy* with respect to the validity of tax measures, particularly when that policy was in direct contravention of the policy adopted by the framers of our Constitution. However that may be, it is not the description of a tax measure as "double taxation" which invalidates it. The term simply raises a red flag which warns that the tax may be invalid on a more fundamental ground. As observed by Judge O'Rear in the Cumberland Telephone case, section 171 of the Kentucky Constitution is the barrier to surmount.

That section provides that taxes "shall be uniform". In Campbell County v. City of Newport, 174 Ky. 712, 193 S.W. 1 (1917), Judge Carroll analyzed the impact of this provision upon the claim of the alleged vice of double taxation. The opinion states (page 5 S.W.):

"In the present Constitution there is a declaration that taxation must be uniform, but no direct prohibition against double taxation. But a prohibition against double taxation was hardly necessary, because there cannot be such a thing as double taxation where the taxation is uniform.

" 'Double taxation' means taxing twice, for the same purpose, in the same year,

some of the property in the territory in which the tax is laid without taxing all of it. If all the property in the territory upon which the tax is imposed is taxed twice and for the same purpose and in the same year without discrimination or exemption, this is not double taxation in the sense that such taxation is prohibited, because, within constitutional limits, if the tax is uniform, the amount of it is in the discretion of the taxing authorities, and it may all be levied at one time, or it may be the subject of several levies. Uniformity in taxation and double taxation are wholly inconsistent. One cannot exist where the other is in force. And so if our constitutional scheme of uniform taxation is observed, there can be no double taxation."

This is a clear exposition of the principle set forth in Cumberland Telephone & Telegraph Co. v. Hopkins, 121 Ky. 850, 90 S.W. 594 (1906); Hager v. Walker, 128 Ky. 1, 107 S.W. 254 (1908); Commonwealth v. Walsh's Trustee, 133 Ky. 103, 106 S.W. 240, 117 S.W. 398 (1909).

■ It is thus apparent that in questions of this kind our real problem is whether the tax measure violates section 171 of the Constitution. It may be noted that the uniformity requirement is closely related to the prohibition against the exercise of arbitrary power found in section 2 of that instrument. The former section is applicable to license taxes as well as property taxes. City of Louisville v. Aetna Fire Ins. Co., 284 Ky. 154, 143 S.W.2d 1074 (1940), and cases cited therein.

■ It has long been recognized that a legislative body may discriminate between classes in the imposition of license taxes. Commonwealth v. Payne Medicine Co., 138 Ky. 164, 127 S.W. 760 (1910); Metropolitan Life Ins. Co. v. City of Paris, 138 Ky. 801, 129 S.W. 112 (1910); City of Harrodsburg v. Devine, Ky., 418 S.W.2d 426 (1967). As said in McQuillin, Municipal Corporations, Third Edition, page 146, section 26.-60:

"Classification for the purpose of municipal licensing is a legislative function, and selection by a municipality among avocations, occupations and activities for raising revenue by license is allowed, providing the selection involves no unreasonable classification."

In Williams v. City of Bowling Green, 254 Ky. 11, 70 S.W.2d 967 (1934), it is noted that differences in organization, management, and type of business may be sufficiently substantial to justify classification. However, discrimination which does not have a reasonable basis is obviously arbitrary and violates the principle of equality and uniformity set forth in section 171.

Examples of unreasonable classification are shown by the following cases. In Fiscal Court of Owen County v. F. and A. Cox Co., 132 Ky. 738, 117 S.W. 296 (1888), a license tax on vehicles using the streets was held invalid insofar as the tax on four-horse wagons was three times as much as upon three-horse wagons. In City of Covington v. Dalheim, 126 Ky. 26, 102 S.W. 829 (1907), a license tax only on grocers using delivery wagons which was not imposed upon other grocers was held lacking in uniformity. In City of Newport v. Frankel, 192 Ky. 408, 233 S.W. 884 (1921), a license tax on theatres was held invalid where the seller of a twenty-cent ticket was required to pay $15 a day more than the seller of a fifteen-cent ticket. In Commonwealth v. Payne Medicine Co., 138 Ky. 164, 127 S.W. 760 (1910), a license tax upon sellers of patent medicines exclusively, when no such fee was charged other sellers, was held invalid.

■ Running through the foregoing cases is the principle that a legislative body may not, without some rational basis, select a certain type of business enterprise and impose upon it a substantially heavier tax than that imposed upon other businesses which fall within the same general classification. The case of Great Atlantic & Pacific Tea Co. v. Kentucky Tax Com'n,

278 Ky. 367, 128 S.W.2d 581 (1939), is quite significant. It involved a graduated tax upon chain stores and the difference in rates was based solely on the number of stores. The opinion, declaring the Act invalid, first notes that a valid classification requires natural and reasonable differences and must be substantial. The court said (page 588 S.W.):

"In the case before us the tax imposed is not a tax upon the privilege of operating any particular kind of store, but is a tax upon the privilege of operating more than one store under one management. The taxes bear no relation to the volume of business, nor do the advantages, alleged to attach to multiple store operation, such as abundant capital, quantity buying, buying for cash and skill in buying, bear any relation to the number of units operated in any particular group.

"In final analysis the advantages claimed depend upon volume of business and skill in management, and these elements are not peculiar to the ownership of multiple units."

Another case of significance is Commissioners of Sinking Fund v. Weis, 269 Ky. 554, 108 S.W.2d 515 (1937). Therein the city of Louisville imposed a license tax upon those selling a certain type of merchandise on the installment plan. It was held invalid. The court observed (page 516 S.W.):

"This license tax must be regarded as a revenue measure. It seems to us that the singling out of the business of selling necessities for special licensing savors of inequity rather than of reason. But the controlling factor in the judicial determination of validity is that of logical considerations of uniformity and equality."

It may be argued that the foregoing cases involve unreasonable discrimination *within* a particular class, whereas here we do not have discrimination within the class of hotels and motels. However, under the circumstances presented, the same principle is applicable. The City of Lexington by its general licensing ordinance has placed *all* business enterprises in the city in one class and has not attempted to fix specific fees for specific businesses. These license taxes are based upon the volume of business done as reflected in the net income. Accepting the city's own argument that the "room tax" is simply an *additional* tax upon hotels and motels, the situation is the same as if the city had provided that all businesses pay 1½% of the net profits, except hotels and motels shall pay 2½% thereof. Here we have the singling out of a particular business to carry a proportionately heavier tax load than all other businesses. We can find no reasonable basis for imposing this additional tax upon this particular business.

An attempted justification for such discrimination appears in the Preamble to the ordinance, which recites that hotels and motels (and those similarly situated) "use city services of sewage disposal, garbage collection, fire protection and police protection to a greater degree than other citizens, businesses, etc." The Preamble further recites that the city "is in need of funds", and we can sympathetically understand this reason, although it of course cannot justify an unreasonably discriminatory tax.

No proof has been taken in this case with respect to the extra city services which might be required by hotels and motels and not by other businesses, and appellees say that issue is not before us. However, we believe the question is presented in determining whether the city has unreasonably placed hotels and motels in a special class for the purpose of imposing on them an additional tax burden. We believe we properly may take judicial notice that a motel would not require more city services than, say, an apartment house with the same number of rooms. In any event, if the city is basing this additional tax upon the rendition of city services,

then it is violating the principles we have above discussed by not imposing upon other businesses additional taxes commensurate with the furnishing of such services. In fine we are not impressed that the city's justification of this tax constitutes a reasonable and acceptable basis for this special classification.

The city relies heavily upon 508 Chestnut, Inc. v. City of St. Louis, Mo., 389 S.W.2d 823. In that case the City of St. Louis had a license-tax ordinance which dealt separately with various kinds of business carried on in the city. Some license fees were in fixed amounts and others were based on gross receipts. Hotels were required to pay a license fee of 50 cents annually for each sleeping room. The tax in controversy was one levied on hotels and motels at the rate of 2% of daily rental receipts from transient guests. The contention was that the principle of uniformity was violated because hotels not doing a transient business would not have to pay the tax. The issue was discrimination *within* the class of hotels and motels. The Supreme Court of Missouri held there was a reasonable basis for making the distinction between transient and nontransient hotels. No contention was made by those representing hotels that this particular business enterprise was being taxed differently or greater than other comparable business enterprises.

As we have above pointed out, the City of Lexington had, prior to the tax in question, placed all businesses in one classification. Without reclassifying other businesses, it has now placed hotels and motels in a single special classification. It is urged by the city that we have upheld the special classification of hotels and motels in Second Street Properties v. Fiscal Court of Jefferson County, Ky., 445 S.W.2d 709 (1969) (hereinabove discussed). Therein was involved the constitutionality of a statute (KRS 83.350) which empowered counties and cities to levy a transient "room tax" upon hotels, motels, and the like, for the purpose of financing the activities of tourists and convention commissions. The issue of unreasonable classification was raised. The principal ground upon which we sustained the classification was that the limited purpose of the tax accorded this particular taxpayer a special benefit from the utilization of the revenue realized. No such distinguishing feature appears here. In making this distinction, we do not mean to intimate that the recognition of particular benefits flowing from the expenditure of revenue necessarily justifies a classification. However, this consideration, along with others, may tip the scales in determining the reasonableness of the classification.

The only justification we can find for the tax in question and for the singling out of this particular class of taxpayers is that the city is in need of funds and hotels and motels comprise a convenient group to assume additional tax burdens. This is not a legally recognizable basis for classification. It is arbitrary in violation of section 2 of the Kentucky Constitution and violates the uniformity principle of section 171.

The judgment is affirmed.

All concur.

OSBORNE, Judge (concurring).

The sole issue presented by this opinion revolves around the proper interpretation of Section 181 of the Kentucky Constitution as it relates to the imposition of a license tax by municipalities. For ease of interpretation, the section should be divided into four parts. Kentucky Constitution, Section 181, provides:

"(1) The General Assembly shall not impose taxes for the purpose of any county, city, town or other municipal corporation, but may, by general laws, confer on the proper authorities thereof, respectively, the power to assess and collect such taxes.

*(2)* The General Assembly may, by general laws only, provide for the payment of license fees on franchises, stock used for breeding purposes, the various trades, occupations and professions, or a special or excise tax, and

*(3)* may, by general laws, delegate the power to counties, towns, cities and other municipal corporations, to impose and collect license fees on stock used for breeding purposes, on franchises, trades, occupations and professions, and

*(4)* the · General Assembly may, by general laws only, authorize cities or towns of any class to provide for taxation for municipal purposes on personal property, tangible and intangible, based on income, licenses or franchises, in lieu of an ad valorem tax thereon."

Pursuant to Section 181 the General Assembly enacted KRS 92.280 and 92.281 which granted municipalities the authority to levy all those taxes which were permissible under Section 181.

The question now arises as to what taxes are permissible under Section 181. There can be no doubt that a municipality can levy a license tax, since under Section 181 (3) that right is specifically designated. However, the authority of cities to levy the much broader excise tax is not nearly so clear. Under Section 181(2) it is specified that the General Assembly can, by general power, levy excise taxes. But, in designating what authority the General Assembly could delegate to municipalities, the power to levy an excise tax is omitted. Whether the omission was intended, or merely an oversight, is not clear. In any event, the question has long been settled by this court. It has consistently held that municipalities with delegated authority from the General Assembly cannot levy an excise tax. George Wiedemann Brewing Co. v. City of Newport, Ky., 321 S.W. 2d 404 (1959); see also City of Louisville v. Sebree, 308 Ky. 420, 214 S.W.2d 248 (1948).

The problem which now faces us arises because a license tax is, according to most authorities, a form of an excise tax. Thus, the municipality is always faced with the problem when enacting a license tax that it might be enacting some other form of excise tax which in fact is unconstitutional. The courts in determining whether or not a city has acted within its constitutional boundaries must first determine what distinguishes a license tax from other excise taxes. An excise has been defined as a species of tax consisting generally of duties laid upon the manufacture, sale or consumption of commodities within the state, or upon certain callings or occupations, often taking the form of exactions for licenses to pursue them. In a more modern sense an excise is any tax which does not fall within the classification of a poll tax or a property tax and embraces every form of burden not laid directly upon persons or property. Pollock v. Farmers'·Loan & Trust Co., 157 U.S. 429, 15 S.Ct. 673, 39 L.Ed. 759; Booth Ex'r v. Commonwealth, 130 Ky. 88, 113 S.W. 61, 65 (1908); see also 51 Am.Jur. Taxation, § 36, p. 65.

As for what is a license tax it would seem that it is that portion of an excise tax which is imposed on the privilege of exercising certain callings, professions, or vocations. Shanks v. Kentucky Independent Oil Co., 225 Ky. 303, 8 S.W.2d 383 (1929); Levi v. City of Louisville, 97 Ky. 394, 30 S.W. 973 (1895). This tax is generally measured by a flat rate or by such bases as capital stock, capital surplus, number of units or capacity. Usually excluded are taxes measured directly by transactions, gross or net income, or value of property except to those to which only nominal rates apply.

This court on occasion has attempted to make a distinction between the two taxes. In Shanks v. Kentucky Independent Oil Co., supra, the state enacted a corporate license tax which the appellant had paid. Subsequent thereto the state passed a three-cent gasoline tax under which the

appellant was required to pay three cents on each gallon of gasoline. The appellant contended that this was merely a second license tax and amounted to double taxation. This court affirmed on the theory that the gasoline tax was not a license tax, but by its nature was an excise tax. In making the distinction the court stated as follows:

"A license tax or tax for the privilege of doing business is sometimes referred to as an excise, as are all forms of taxation which are not burdens laid directly upon persons or property. The three-cent tax on gasoline imposed by the 1924 act, however, is an excise in the original and limited sense, being something cut off from the price paid on a sale of goods, as a contribution to the support of the government. A careful reading of the act convinces us that the tax imposed was not intended as a license tax or a tax for the privilege of engaging in the business of selling gasoline in the state. What is taxed is the thing itself as an article of consumption and the tax is an excise on consumption or use and not on the act of selling.

\*　　\*　　\*　　\*　　\*　　\*

"The distinction between an excise tax on the use of a thing and a direct tax upon the thing itself is, of course, fundamental, and a license tax for the privilege of engaging in a particular business is essentially different from each of these forms of taxation. \* \* \* Under this section the Legislature, in addition to the ad valorem tax provided for by section 171, may provide that a license tax shall be paid by any person, firm, or corporation for the privilege of engaging in a specified occupation, and also an excise on the consumption or use of articles sold by such person, firm or corporation. The fact that the seller is required to collect and account for the last-named tax does not alter its character or convert it into a license tax."

It would thus appear from this case that for an enactment to be a license tax it must be levied upon the privilege of engaging in a specific occupation, trade or business. It cannot be levied in such a manner that it in effect is a tax on consumption, use or sale.

This court has said that a municipality cannot levy a license tax unless the authority has specifically been delegated by the legislature. City of Harrodsburg v. Devine, Ky., 418 S.W.2d 426 (1967); City of Louisville v. Sebree, supra; West v. City of Mount Sterling, Ky., 65 S.W. 120 (1901); Baker v. City of Lexington, Ky., 53 S.W. 16 (1899). If the municipality has that authority, then it can classify certain occupations in order to tax them, but that classification must be reasonable and not arbitrary. Great Atlantic and Pacific Tea Co. v. Kentucky Commission, et al., 278 Ky. 367, 128 S.W.2d 581 (1939); Karnes v. City of Benton, 258 Ky. 425, 80 S.W.2d 558 (1935). In addition, any license tax that is levied must be uniform as to the occupation and if there is a classification then uniform as to the class. Hager, Auditor v. Walker, 128 Ky. 1, 107 S.W. 254 (1908); George Schuston & Co. v. City of Louisville, 124 Ky. 189, 89 S.W. 689 (1905).

It appears from our reported cases that we recognize as valid the imposition of a license tax based upon three theories: (1) A uniform tax upon all persons engaged in the same business without reference to the amount of business done; (2) One that levies a uniform tax upon the volume of business done without changing it in the proportion that the business increases, the percent being the same; and (3) a division of a general class according to the volume of business done, and the imposition of a different tax upon each division into which the class is divided. Gordon v. City of Louisville, 138 Ky. 442, 128 S.W. 327 (1910).

The municipal license tax in its inception was a regulatory tax which was levied

across the board at a flat or even rate regardless of the amount of business done. Thus, all who were engaged in advertising or bill posting, Loges v. City of Louisville, 141 Ky. 367, 132 S.W. 565 (1910); contractors doing work within the city limits, City of Winchester v. King, Ky., 266 S.W. 2d 343 (1954); those who engaged in the practice of law, Woodruff v. City of Louisville, Ky., 6 Ky.Opin. 230 (1872); Baker v. City of Lexington, Ky., 53 S.W. 16 (1899); all exchange, loan, and broker's offices, Simrall v. City of Covington, 90 Ky. 444, 14 S.W. 369 (1890); all hawkers and peddlers, City of Carlisle v. Hechinger, 103 Ky. 381, 45 S.W. 358 (1898); those doing business as insurance companies, German Washington Mut. Fire Ins. Co. v. Louisville, 117 Ky. 593, 78 S.W. 472 (1904), are all subject to municipal license taxes. This tax, levied directly on the privilege of doing business within a city, based on a flat rate, is the pure license tax and is easily distinguished from the remaining excise taxes.

However, soon the imposition of a license tax became one of the important means by which municipalities sought to raise revenue. Pursuant to this thesis the cities began to levy a uniform tax based upon the volume of business done. It is in this area where municipalities link the so-called license tax to volume of business done that the distinction between a license and an excise tax becomes nebulous at best. This type tax was early upheld in Southern Building and Loan Ass'n of Knoxville v. Norman, 94 Ky. 294, 32 S.W. 952. Here a tax of 2% of the gross receipts of all foreign corporations was imposed by the state and upheld as a valid license tax. Likewise, in Fidelity & Casualty Co. v. City of Louisville, 106 Ky. 207, 50 S.W. 35 (1899), a 2% tax imposed on every insurance premium paid in the city was upheld as a valid license tax. In Brown-Forman Co. v. Commonwealth, Ky., 101 S.W. 321 (1907), a tax of one and one-fourth cents per gallon of distilled spirits manufactured was upheld as a valid license tax. See also Greene v. Taylor, Jr., 184

Ky. 739, 212 S.W. 925 (1919). This line of cases is hard to distinguish from other cases where this court has said that such taxation on volume or gross receipts is an excise. In Shanks v. Kentucky Independent Oil Co., supra, the state passed a gasoline act requiring a three-cent tax on each gallon of gasoline. There the court said that such a tax on volume was an excise in its original or limited sense. A similar decision was handed down in City of Louisville v. Churchill Downs, 267 Ky. 339, 102 S.W.2d 10. In that case it was contended that the imposition of a tax on gross receipts derived from the operation of a race track as a place of amusement or entertainment was the duplication of a daily license tax for the privilege of engaging in that business. In that case the court noted that the original tax was a license tax. However, it declared that the tax on the gross receipts was purely an excise tax.

Perhaps it is clear to those more adept in legal gymnastics than I why in one instance a tax on volume or gross receipts is a license tax, and in the next is purely an excise.

If the reader up to this point thinks the law is in a state of utter confusion, behold the next series of encounters. The City of Louisville enacted Ordinance 83, Series 1950, providing:

"On or after July 1, 1950, every person, association, corporation or other entity engaged in any occupation, trade, profession, or other activity in the City shall pay into the Sinking Fund of the City for the purposes set forth under Section 91.200 of the Kentucky Revised Statutes as amended by an Act of the General Assembly of 1950, an annual license fee for the privilege of engaging in said activities, which license fee shall be measured by one per centum of (a) all salaries, wages, commissions and other compensations earned by every person in the City for work done or services performed or rendered in the City; and

(b) the net pofits of all businesses, professions, or occupations from activities conducted in the City."

The Ordinance further made provisions for the withholding by employers of the tax from salaries of employees and provided that the term net income from operation of business or enterprise shall be determined by the same method used for reporting federal income tax. There can no longer be any doubt but what this Ordinance imposed an income tax practically identical to that imposed by the federal government. It was attacked in the courts and this court in a lengthy, utterly confusing, opinion held the tax to be a license tax. See City of Louisville v. Sebree, supra. The substance of the court's opinion is contained in the following paragraph.

"This Louisville ordinance lays the tax upon the privilege of working and conducting a business within the city, and only measures the value of the privilege by the amount of earnings or net profits. It is contended that this is but a subterfuge to avoid the absence of power and that, looking beyond the matter of form to the matter of substance, it is but an income tax. *The definition or classification may be a matter of approach or point of view.* Sometimes one may not see the woods for the nearby trees. The psychological impact loses force when emphasis is placed on what is made subject to taxation rather than on the measure of the tax and the basis of computation. Or if the word 'receipts,' which, in truth, is the more appropriate term, be used instead of 'income.' If graduated stated sums had been provided instead of a percentum of receipts or net profits, the source of such sums would in all probability have been the same. And that way of fixing the tax could scarcely be regarded as illegal. Cf. George Schuster & Co. v. City of Louisville, 124 Ky. 189, 89 S.W. 689. The sting of feeling that an unlawful tax has been imposed would then

be eased by the recognition of certain legitimacy." (Emphasis added).

In substance the court held that a city council might have levied this tax in another way and it would have been valid, therefore, it was going to hold the tax valid notwithstanding its obvious invalidity. It is my opinion this type of reasoning thoroughly brands itself for what it really is, without comment from me. But the history does not stop here. In 1952 the tax was attacked by the employees of the Naval Ordinance Plant located in Louisville, Kentucky, contending that they were not subject to the tax since it was in fact a license tax as this court had held and federal employees were not subject to license tax. This court in one of the most beautiful pieces of legal gymnastics ever exhibited held the employees to be wrong in their contention that they were subject to the tax as the tax was an income tax. See Commissioners of Sinking Fund of City of Louisville v. Howard, Ky., 248 S.W.2d 340, wherein the court's ruling upon this point reads as follows:

"The appellees point out that the Congressional Act of 1940 authorizes only the levy of an 'income tax,' and that in City of Louisville v. Sebree, 308 Ky. 420, 214 S.W.2d 248, 253, this court specifically held the Louisville occupational tax was not an income tax. It is true we held in the Sebree case that the tax was not an income tax within the meaning of the Kentucky Constitution, but the question here is whether it is an income tax as that term is defined in the Act of Congress. As previously pointed out in this opinion, the Act of Congress defines 'income tax' to include any tax 'measured by' net income, gross income or gross receipts. We said in the Sebree case that the Louisville tax is a license tax which 'measures the value of the privilege by the amount of earnings or net profits.' The tax clearly falls within the definition made by the Act of Congress."

This holding was appealed to the Supreme Court of the United States. That court in Howard, et al. v. Commissioners of the Sinking Fund of Louisville, et al., 344 U.S. 624, 73 S.Ct. 465, 97 L.Ed. 617, agreed with the Kentucky Court of Appeals that the tax was in fact an income tax. Mr. Justice Black and Mr. Justice Douglas dissented, saying:

"I have not been able to follow the argument that this tax is an 'income tax' within the meaning of the Buck Act. It is by its terms a 'license fee' levied on 'the privilege' of engaging in certain activities. The tax is narrowly confined to salaries, wages, commissions and to the net profits of businesses, professions, and occupations. Many kinds of income are excluded, e. g., dividends, interest, capital gains. The exclusions emphasize that the tax is on the *privilege* of working or doing business in Louisville. That is the kind of a tax the Kentucky Court of Appeals held it to be. Louisville v. Sebree, 308 Ky. 420, 214 S.W.2d 248. The Congress has not yet granted local authorities the right to tax the privilege of working for or doing business with the United States."

I wholeheartedly agree with these two Honorable Justices. I am also unable to follow the argument. I cannot see how a tax can on one hand be a license tax and on the other be an income tax, which is absolutely forbidden under °the Constitution. Nowhere else in the law is a party litigant permitted to have it both ways as the City of Louisville did in this instance.

Most recently in Second Street Properties v. Fiscal Court of Jefferson County, Ky., 445 S.W.2d 709 (1969), we had a tax very similar to the one here before us and approved it. However, no contention was made by the parties that it violated Section 181 of the Kentucky Constitution, therefore, that question was not considered. The majority opinion in discussing this states that the court is inclined to believe that the question was not presented because it was lacking in merit. I will not presume to ascribe motives to the parties litigant in that case. Suffice it to say that it was not presented and, therefore, was not considered. Had it been presented my position in that case would be the same as in this.

Admittedly there are fuzzy areas existing between what is a license and what is a purely excise tax. It would be impossible to clear up these areas in one opinion, therefore, I leave that task to other days and other cases. There are a few things that are definite and certain. First, Section 181 of the Kentucky Constitution only permits cities to levy license tax upon franchises, trades, occupations and professions. Before any person may be taxed his endeavors must fit one of these qualifications, otherwise the tax is clearly void.

Second, sales taxes and income taxes are admittedly by all authority excise taxes and cannot be levied by cities.

Third, where a tax has all of the attributes of either a sales tax or an income tax and no real earmarks of the ancient license tax, it cannot be reasonably called a license tax. To do so only confuses the law and confounds those who must operate under it.

In retrospect it now appears that there is little doubt but what the occupational tax as was enacted by the City of Louisville in Ordinance 83, Series 1950, was in violation of Section 181. However, this court found otherwise. Based upon that decision, many other cities have adopted either highly similar or identical taxes. For us to recant at this time and declare that type ordinance invalid would be to invalidate practically all occupational license taxes in this Commonwealth. I do not believe this is a course that is practical nor would it demonstrate the degree of wisdom that the people have a right to expect from their judicial officials. The die is now cast and I will not disturb

these taxes. However, by the same token, I am convinced that we cannot permit the adoption by the cities of an outright sales tax under the guise of a license tax.

It is my opinion that the tax here under consideration is clearly a sales tax on the rental of motel rooms, therefore, an excise tax in violation of Section 181 of the Constitution of this Commonwealth. I would affirm the action of the trial court in this case.

REED and NEIKIRK, JJ., join in this concurring opinion.