FISCAL COURT OF JEFFERSON
COUNTY, Kentucky, Appellant,

v.

CITY OF LOUISVILLE, Kentucky, et
al., Appellees.

CITY OF WINDY HILLS, Kentucky,
Individually, etc., et al.,
Cross-Appellants,

v.

FISCAL COURT OF JEFFERSON
COUNTY, Kentucky, et al.,
Cross-Appellees.

Bill BLANFORD, Cross-Appellant,

v.

FISCAL COURT OF JEFFERSON
COUNTY, Kentucky, et al.,
Cross-Appellees.

CITY OF LOUISVILLE, Kentucky,
Cross-Appellant,

v.

FISCAL COURT OF JEFFERSON
COUNTY, Kentucky, et al.,
Cross-Appellees.

CITY OF SHIVELY, Kentucky,
Cross-Appellant,

v.

FISCAL COURT OF JEFFERSON
COUNTY, Kentucky, et al.,
Cross-Appellees.

Supreme Court of Kentucky.

Sept. 16, 1977.

As Modified on Denial of Rehearing
Dec. 9, 1977.

J. Bruce Miller, Jefferson County Atty., Eugene L. Mosley, Asst. County Atty., Stuart L. Adams, Jr., Bert T. Combs and Charles R. Simons, Tarrant, Combs & Bullitt, Louisville, for appellant and cross-appellees.

Foster L. Haunz, Harry K. Herren, Jr., Claude L. Nutt, Richard G. Segal, L. Stanley Chauvin, Jr., J. W. Jones, Burt J. Deutsch, Director of Law, George S. Schuhmann, William W. Lawrence, Mark Simpson, Louisville, for appellees and cross-appellants.

Robert F. Stephens, Atty. Gen., Charles W. Runyan, Asst. Deputy Atty. Gen., Frankfort, Paul L. Madden, Hancock County Atty., Hawesville, Vic Hellard, Jr., Legislative Research Commission, Frankfort, George M. McClure, III, Boyle County Atty., Danville, Morton Holbrook, Sandidge, Holbrook & Craig, PSC, Owensboro, Henry D. Stratton, Pikeville, Mark E. Gormley, Woodford County Atty., Versailles, Homer W. Ramsey, Whitley City, Richard H. Lewis, Benton, amicus curiae.

JONES, Justice.

This case turns upon the constitutionality of Senate Bill 165, (KRS 67.083) enacted by the General Assembly at its 1972 regular session. Although it is not designated as such, the act purports to grant home rule to the 120 counties in the Commonwealth. It is referred to in the briefs of the numerous litigants as the "Home Rule" act. Its provisions are as follows:

"(1) The fiscal court of any county is hereby authorized and empowered to exercise all rights, powers, franchises, and privileges including the power to levy all taxes not in conflict with the constitution and statutes of this state now or hereafter enacted, which the fiscal court shall deem requisite for the health, education, safety, welfare, and convenience of the inhabitants of the county and for the effective administration of the county government to the same extent as if the general assembly had expressly granted and delegated to the fiscal court all the authori-
ty that is within the power of the general assembly to grant to the fiscal court of said counties.

(2) The county judge is hereby authorized and empowered to exercise all of the executive powers pursuant to subsection (1) of this section.

(3) The powers granted to counties by this Act shall be in addition to all other powers granted to counties by other provisions of law. A permissive procedure authorized by this Act shall not be deemed exclusive or to prohibit the exercise of other existing laws and laws which may hereafter be enacted but shall be an alternate thereto."

Pursuant to the authority granted by KRS 67.083, the fiscal court of Jefferson County enacted a series of ordinances intended to have county-wide application.

This action was brought by the Jefferson Fiscal Court seeking a declaration of its rights under KRS 67.083. Various classes of cities located in Jefferson County, and Bill Blanford, a resident of an unincorporated area of the county, representing the class of others so situated, were named as defendants. On January 8, 1974, all the parties to the action signed an agreed order holding this action in abeyance until "such time as the 1974 General Assembly has met and determined whether any changes are necessary." Counsel for the parties had information that proposed changes in KRS 67.083 would be made by the legislature at its 1974 session. However, no changes were made. On June 6, 1974, all parties that actively participated in the action joined in a stipulation of the issues involved. The case was submitted for judgment upon the pleadings and the briefs filed by the parties.

The trial court, in a comprehensive opinion dealing with the issues, made detailed findings of fact and conclusions of law. In conformity with that opinion, he entered judgment. He found KRS 67.083 to be a lawful delegation of powers to the fiscal courts of this Commonwealth. However, he held that those powers could be exercised only in the unincorporated areas of any county.

The Fiscal Court of Jefferson County appealed the judgment. Cross-appeals were filed by the City of Louisville and by numerous cities of the fifth and sixth class located in Jefferson County. Bill Blanford, a resident of an unincorporated area of Jefferson County, likewise filed a cross-appeal. The appeal and cross-appeals were consolidated in this court to the extent of placing the records together and consolidating the briefing of appeals.

The Fiscal Court of Jefferson County contends the trial court erred by interpreting the statute to mean that fiscal courts cannot enforce county ordinances within the boundaries of municipalities located in those counties. The other cities, parties to this action, and Bill Blanford, contend KRS 67.083 is unconstitutional—an unlawful delegation of powers of the Kentucky Legislature.

█ In the interpretation of statutes, the function of this or any court is to construe the language so as to give effect to the intent of the legislature. There is no invariable rule for the discovery of that intention. The actual words used are important but often insufficient. The report of legislative committees may give some clue. Prior drafts of the statute may show where meaning was intentionally changed. Bills presented but not passed may have some bearing. Words spoken in debate may be looked at to determine the intent of the legislature. Here we have none of these.

However, we do have the official reports of the debates of delegates to the Constitutional Convention of 1890–1891. This court is convinced that the debates indicate that most of the delegates felt that the root of Kentucky governmental problems was the almost unlimited power of the General Assembly. One of the delegates said: "The principal if not the sole purpose of the constitution we are here to frame is to restrain its [the legislature's] will and restrict its authority."[1]

The legislative branch of government was drastically affected by the work of the delegates. They prohibited special laws applicable to one city, one town or county. The delegates enumerated 28 subjects on which special legislation was forbidden. The last session of the General Assembly under the 1850 constitution enacted 1926 Acts. Only 117 of these affected more than one county.[2]

The changing of county lines for the accommodation of certain individuals prompted one of the delegates to say: "The committee [legislative] is of the opinion that there should be some general principles which shall control the dismemberment of counties. That principle are (sic) that the county itself shall consent and the dismembered parts shall consent . . . *a majority in the county is as safe a body to determine that question as the legislature of a state.*"[3] (Emphasis added).

This court does not infer that the statute under consideration is special legislation. It is not. The court, however, is persuaded that the delegates to the Constitutional Convention, in such an important matter as "Home Rule" intended that counties have a voice on the question and the electorate a vote.

"Historically, counties, although containing municipalities, have existed primarily to perform state functions, such as law enforcement, public welfare, and the administration of justice, and to provide governmental services for rural areas; whereas municipalities have existed to supply the governmental needs of compact urban areas. Municipalities have been delegated vast authority to exercise the police power, i.e., to enact legislation relating to public health, safety, welfare and morals, and consequently, the range of municipal functions greatly exceeds that of county functions. Accordingly, counties are more carefully restricted constitutionally than cities in the

1. Constitution of the Comm. of Ky. L.R.C. Info. Bull. # 59 (1971) at vii.

2. See Id. at x.

3. Convention of the Constitution of Kentucky, Official Report, pp. 393–396.

rate at which they may impose property taxes." [4]

Although the Fiscal Court of Jefferson County concedes that a county should not be permitted to enforce its ordinances within a municipality under many circumstances, it nevertheless contends that there are some matters where the fiscal court can supersede the powers of a city. This position would create numerous problems. The overlapping of governmental boundaries in Jefferson County creates a maze of jurisdictions. The overly broad grant of authority to fiscal courts would magnify those problems. With more that 80 incorporated cities in Jefferson County, each having its officers, ordinances and regulations, the problems engendered by KRS 67.083 would be increasingly more complex. In baseball parlance, it would be difficult for the citizenry, as well as officers of the municipalities to ascertain whose turn it was at bat. No one could ever tell who was "on first." The problems created would be sufficient for the citizens of municipalities, as well as those of unincorporated areas to " 'Cry Havoc' and let slip the dogs of war." [5]

█ This court approaches the decision of the General Assembly in enacting KRS 67.-083 "with a sense of its grave responsibility to render judgment in accordance with the principles established for the goverance of all three branches of government." Let there be no misunderstanding as to the function of this court in such a case. "It is sometimes said that the court assumes a power to overrule or control the action of the people's representatives." This is not so. The constitution of this state is supreme. It is ordained and established by the people. Each member of this court took a solemn oath: "To support the constitution . . . of this Commonwealth. . . ." All legislation must conform to the principles established by the constitution. When an act of the legislature is appropriately challenged in the courts as not conforming to the constitutional mandate, this court has only one duty—"to lay the article of the constitution which is invoked beside the statute which is challenged and to decide whether the latter squares with the former." All this court can do is to announce its considered judgment on the question. "This court neither approves nor condemns any legislative policy." Its function is to "ascertain and declare whether the legislation is in accordance with or in contravention of the provisions of the constitution." [6]

Using this formula, the court directs its attention to the constitutional article invoked, § 29 of the Kentucky Constitution which provides:

"The legislative power shall be vested in a House of Representatives and a Senate, which, together, shall be styled the 'General Assembly of the Commonwealth of Kentucky.' "

█ To paraphrase KRS 67.083, set out in detail at the beginning of this opinion, the General Assembly granted fiscal courts "carte blanche" authority to administer county government to the same extent as if the General Assembly had expressly granted and delegated to the fiscal court all the authority that is within the power of the General Assembly to grant to the fiscal courts of said counties. In essence, this court views such overly broad delegation of powers of the General Assembly to fiscal courts as a "quit claim deed" to all its powers.

Tradition establishes that county government in Kentucky is based on the premise that all power exercised by the fiscal court must be *expressly* delegated to it by statute. County Government in Kentucky, L.R.C. Info. Bull. # 115 (1976) at p. 1. The 1964–65 Constitution Assembly was well aware of our history and tradition when it proposed for adoption a new Local Govern-

---

4. Dr. Kenneth Vanlandingham, The Constitution and Local Government, L.R.C. Info. Bull. # 36 (1964) at p. 9.

5. William Shakespeare, Julius Caesar, Act III, Sc. I.

6. *United States v. Butler*, 297 U.S. 1, 62, 63, 56 S.Ct. 312, 318, 80 L.Ed. 477 (1936).

**482**

ment Article. In the comment to that Article it was stated:

"The Revision attempts to reverse the basic relationship of state government with its subdivisions. Under the present Constitution, and as firmly reiterated by the court, counties and cities have only those powers expressly delegated by state legislation. Under the Revision, counties and cities would have all powers not denied to them by the state Constitution or by state legislation." A Comparison of the Present and the Proposed Kentucky Constitutions, L.R.C. Info. Bull. # 52 (1966) at p. 61.

The metallic thread which history and tradition weave through the warp and woof of our Constitution is that while the General Assembly may grant governmental powers to counties it must do so with the precision of a rifle shot and not with the casualness of a shotgun blast. The thoughtful, purposeful and deliberate delegation of a known power is required of the General Assembly. It is here that KRS 67.083 fatally differs from the myriad of effective specific grants of power which appear in other statutes.[7]

Sec. 181 of our Constitution provides that the General Assembly may delegate to counties the power to impose and collect license, franchise and occupational taxes. At the time the General Assembly passed this statute it had to know that by the terms of Sec. 181 these powers effectively passed to the counties. To that extent and no further, its action was thoughtful, purposeful and deliberate. As to those powers not so enumerated, the grant is legislation in a vacuum and a nullity.

The judgment is reversed for further proceedings consistent with this opinion.

All concur.

---

7. For example see KRS 67.080, 70.540, 70.570, 97.791, 100.117, 100.201 and others too numerous to mention.