**William B. STANSBURY, Mayor, City of Louisville, Kentucky, Movant,**

v.

**Milburn MAUPIN et al., Respondents.**

**James E. LAWRENCE, Movant,**

v.

**Milburn MAUPIN et al., Respondents.**

Supreme Court of Kentucky.

May 13, 1980.

Joseph J. Leary, Frankfort, Frank E. Haddad, Jr., Louisville, for movants.

Walter R. Butt, III, S. Arnold Lynch, Erwin A. Sherman, Lynch, Sherman & Fowler, Louisville, for respondents.

PALMORE, Chief Justice.

The principal issue in this case is whether the legislative body of a city has the authority to issue a subpoena to assist an investigation into the conduct of its mayor. We hold, as did the trial court, that it does not.

On August 2, 1978, the Board of Aldermen of the City of Louisville adopted a resolution creating a Select Committee of its members "to conduct an investigation and study of the extent, if any, to which illegal, improper or unethical activities were engaged in by the Mayor of the City of Louisville, William B. Stansbury, acting either individually or in combination with others; . . . and to determine whether in its judgment any occurences [sic] which may be revealed by the investigation and study indicate the necessity or desirability of the enactment of new legislation."

Among other things, the resolution empowered the Select Committee "to hold hearings for taking testimony on oath," to require the presence of any officer or employe of the city to produce documentary and physical evidence within his or its custody and control. The chairman of the committee was given the authority to administer oaths to witnesses appearing before the Committee.

Subsequently, after the mayor had declined to produce materials he considered to be personal, the Board of Aldermen enacted over his veto an ordinance providing, "In connection with any investigation, committee meeting or public hearing by the Board of Aldermen, or a duly constituted committee thereof, witnesses may be compelled to give sworn testimony, and to produce relevant documents by subpoena issued in the name of the City of Louisville."

Mayor Stansbury and James E. Lawrence, a member of the Board of Aldermen, brought separate actions in the Jefferson Circuit Court challenging the authority of the Board to issue subpoenas and administer oaths and, perforce, its authority to delegate it to the Select Committee. The two proceedings were consolidated and resulted in a summary judgment enjoining the Board and the Select Committee from exercising such powers. The Court of Appeals reversed, holding that under Const. Sec. 160 and KRS 83.660 the express power to hear charges against and remove an executive officer, including the mayor, from office carries with it by necessary implication the power to investigate, compel attendance of witnesses, and secure testimony under oath. In a nutshell, we differ from that view only to the extent that in our opinion such implied authority is confined to removal proceedings after they have been duly commenced by the filing of charges.

The authority to subpoena witnesses and compel them to give evidence is too powerful, and too susceptible of abuse, to be implied in the absence of utter necessity. It is a tool of inquisition, short only of the rack and screw. Even in the hands of a grand jury it can be and sometimes is used in a manner so oppressive as to seem inconsistent with the high value of individual liberty which is traditional in this country. Certainly it has no justifiable basis as an instrument to build a case of civil misconduct.

The last sentence of Const. Sec. 160 empowers the General Assembly to prescribe the manner in and causes for which all officers of towns and cities may be removed from office. KRS 83.660(1) provides that "executive and ministerial officers of the city may be removed by the board of aldermen, sitting as a court, under oath, upon charges preferred by the mayor or by any two (2) members of the board of aldermen, or, in case of charges against the mayor, upon charges preferred by not less than five (5) members of the board of aldermen."

*McGrain v. Daugherty*, 273 U.S. 135, 47 S.Ct. 319, 71 L.Ed. 580 (1927), observed that "state courts quite generally have held that the power to legislate carries with it by necessary implication ample authority to obtain information needed in the rightful exercise of that power, and to employ compulsory process for the purpose," and went on to hold that the houses of Congress likewise have the same authority. The reasoning of the Court of Appeals in this case

was that the governing body of a city also has the authority as a necessary incident of its legislative function. Perhaps, indeed, the General Assembly does have the power, though we need not so decide, but it is a far cry from the halls of Congress to town council. The powers of a city have generally been confined to those expressly delegated to it by the General Assembly or implied as being "indispensable to enable the municipality to carry out its declared objects, purposes and expressed powers." Cf. *Griffin v. City of Paducah*, Ky., 382 S.W.2d 402, 404 (1964). It occurs to us that the various towns and cities of Kentucky have functioned for quite some time without the help of the subpoena power. It would be difficult to say now that such a power is a necessary incident of their authority to legislate.

The General Assembly has not been reluctant to delegate the subpoena power to other agencies. See, for example, KRS 7.320 (Legislative Research Commission); KRS 90.200 (Civil Service Board); KRS 278.230 and 278.330 (Energy and Utility Regulation Commission); and KRS 324.190 (Real Estate Commission). It may easily grant the authority to city legislative bodies if it intends for them to have it. We agree with the Court of Appeals that KRS 83.520, the city "home rule" act, does not include it. Cf. *Fiscal Court of Jefferson County v. City of Louisville*, Ky., 559 S.W.2d 478, 482 (1977).

Even if we could say that the authority to legislate carries with it the power to compel attendance of witnesses and administer oaths, there would be a serious question in this particular instance as to whether the recitation of a legislative purpose was nothing more than a transparent effort to cloak the nakedness of the real purpose. In any event, we hold that legislative power of a municipal corporation, of itself, does not embrace by implication the power to compel testimony and administer oaths to witnesses, or to confer similar authority to a committee.

The express authority conferred by KRS 83.660 upon the Board of Aldermen to sit in judgment of charges against the may-

or, and to remove him from office in consequence of those charges, does include as an indispensable concomitant the right to subpoena witnesses and physical evidence and to compel the giving of testimony under oath. So far, however, as the record in this case is concerned, no charges have been brought against the mayor, and under those circumstances there is no basis for the exercise of that authority.

The decision of the Court of Appeals is reversed, and the judgment of the trial court is affirmed.

PALMORE, C. J., and AKER, LUKOWSKY and STEPHENSON, JJ., concur.

CLAYTON, J., dissents and files a separate dissenting opinion.

CLAYTON, Justice, dissenting.

I would hold, as the Court of Appeals did, that the Board of Aldermen has subpoena power.

Kentucky law now provides that executive and ministerial officers of the city may be removed by the Board of Aldermen. It seems to me that in order to intelligently determine whether to bring charges against these officers, the power of subpoena is required to conduct an adequate investigation. The United States Supreme Court said, "We are of the opinion that the power of inquiry—with the process to enforce it—is an essential and appropriate auxiliary to the legislative function." *McGrain v. Daugherty*, 273 U.S. 135, 174, 47 S.Ct. 319, 328, 71 L.Ed. 580, 593 (1927). If this subpoena power is abused, then the General Assembly can revoke the removal power it granted. "The contention . . . that this power of inquiry . . . may be abusively and oppressively exerted . . . affords no ground for denying the power. The same contention might be directed against the power [of removal] . . . ." *McGrain, supra*, at 175, 47 S.Ct. at 329.

I would affirm the Court of Appeals.