John David PRESTON, Individually and on Behalf of All Others Similarly Situated, Appellant,

v.

JOHNSON COUNTY FISCAL COURT, Appellee.

No. 1999–SC–0414–DG.

Supreme Court of Kentucky.

Sept. 28, 2000.

John David Preston, Perry, Preston & Miller, Paintsville, for Appellants.

J. Scott Preston, Preston & Holbrook, Paintsville, for Appellee.

COOPER, Justice.

The city of Paintsville is the county seat of Johnson County, Kentucky. Like most Kentucky counties, Johnson County currently has a population of less than 30,000. Since 1981 and pursuant to KRS 92.281, Paintsville has levied an occupational license fee (tax) of one percent (1%) on the gross compensation of all persons employed or self-employed within the city limits. On July 17, 1997 and pursuant to KRS 67.083(2), the Johnson Fiscal Court passed an ordinance levying an identical occupational license fee on the gross compensation of all persons employed or self-employed within the county. Thus, tax-

payers within the city limits of Paintsville, including Appellant John David Preston, are subject to both taxes. Preston filed this class action on behalf of himself and others similarly situated claiming that Johnson County's ordinance violates Section 2 (no absolute or arbitrary power), Section 3 (equal protection), and Section 59(fifteenth) (no local or special legislation with respect to taxation) of the Constitution of Kentucky and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, because it does not allow him to credit the payment of his city occupational license fee against his county occupational license fee. The Johnson Circuit Court concluded that the ordinance was not unconstitutional and a divided Court of Appeals panel agreed. We granted discretionary review and now affirm.

## I. LEGISLATIVE HISTORY: KRS 68.197; KRS 67.083(2).

KRS 68.197 and KRS 67.083(2) were both enacted pursuant to Section 181 of the Constitution of Kentucky, which authorizes the General Assembly to delegate to cities and counties by general statute the power to impose and collect license fees on trades, occupations and professions.

*KRS 68.197* and KRS 68.198 both originated in House Bill 553 which was enacted by the 1966 General Assembly[1] and which provided in pertinent part[2] as follows:

Section 1. (1) The fiscal court of each county having a population of 50,000 or more, may by order or resolution impose license fees on franchises, provide for licensing any business, trade, occupation or profession, and the using, holding or exhibiting of any animal, article or other thing. License fees on such business, trade, occupation, or profession for revenue purposes, except those of the common schools, shall be imposed

at a percentage rate or rates not to exceed one percent of (a) salaries, wages, commissions and other compensation earned by persons within the county for work done and services performed or rendered in the county, and (b) the net profits of businesses, trades, professions or occupations from activities conducted in the county....

(2) No order or resolution of the fiscal court imposing license fees pursuant to subsection (1) of this Act shall be valid until it is approved by a majority of the voters of the county at an election called by the fiscal court.

Section 2. The election in any county shall be held not less than fifteen nor more than sixty days from the time a resolution calling the election is adopted by the fiscal court....

Section 3. (1) The fiscal court of said counties may provide for the levy, the assessment and the collection of the license fees authorized by section 1 of this Act, provide for the issuance and enforcement of licenses, and specify the county governmental purposes to which the revenue derived from license fees authorized by section 1 of this Act shall be applied.

(2) In making the provisions described in subsection (1), and without limiting them, the fiscal court may, by resolution or order adopt reasonable rules or regulations requiring the preparation and filing of timely, accurate, and truthful returns, accounts, and license applications which will aid in the determination of the amount of the fee.

Sections 1 and 2 were compiled in the Kentucky Revised Statutes as KRS 68.197, entitled: "License fees in counties of 50,000 or more." Section 3 was compiled as KRS 68.198, entitled: "Fiscal court powers as to imposition of license tax (counties of 50,000)." Despite the variance in titles,

---

1. 1966 Ky. Acts ch. 263 §§ 1, 2, 3.

2. Section 4 of House Bill 553 has disappeared from the Kentucky Revised Statutes (if it was

ever compiled therein). That section was irrelevant to the issues in this case.

the fact that both statutes originated in House Bill 553 clearly indicates that both were intended to apply only to counties with populations of 50,000 or more.[3] The body of KRS 68.198 reads the same today as it did when enacted. The title has been changed to reflect the current application of both statutes to counties with populations of 30,000 or more. However, KRS 68.197 has been amended in several significant respects.

A 1974 amendment[4] of KRS 68.197 added what is now subsection (2), which prohibits the imposition of an occupational license fee on training pay received by members of the Kentucky National Guard. The statute was amended again in 1978[5] as follows:

1. Subsection (1) was amended to make the statute applicable to counties with populations of 30,000 or more.

2. Subsection (1) was also amended to authorize such counties to levy an occupational license fee against the net profits of self-employed individuals, partnerships, professional associations, business joint ventures, and business corporations.

3. The election requirements of subsections (3) and (4) were combined into subsection (3) and amended to provide that the license fee would be placed on the ballot at the next general election after it was passed, and, if rejected, would be deemed repealed effective December 31 of that year.

4. A new subsection (4) was created as follows:

> Persons who pay a county license fee pursuant to this section and who also pay a license fee to a city contained in the county may upon agreement between the county and the city, credit their city license fee against their county license fee.

Finally, a 1986 amendment[6] deleted the requirement of a ratification election, renumbered subsection (4) as subsection (3), and added a new subsection (4) as follows:

> The provisions of subsection (3) of this section notwithstanding, effective with license fees imposed under the provisions of subsection (1) of this section on or after the effective date of this Act, persons who pay a county license fee and a license fee to a city contained in the county shall be allowed to credit their city license fee against their county license fee.

Of course, it is this new subsection (4) of KRS 68.197 which Appellant seeks to apply to the Johnson County ordinance. However, KRS 68.197 specifically applies only to counties with populations of 30,000 or more and Johnson County has a population of less than 30,000.

*KRS 67.083(2)* was enacted in 1972 as part of the original "home rule" statute[7] and reads today substantially as it did when enacted:

> The fiscal court of any county is hereby authorized to levy all taxes not in conflict with the Constitution and statutes of this state now or hereafter enacted.

## II. APPLICATION: KRS 68.197; KRS 67.083(2).

■ *Casey County Fiscal Court v. Burke,* Ky., 743 S.W.2d 26 (1988) was an appeal from a circuit court judgment holding that there was no statutory authority for a legislative body of a county with a population of less than 30,000 to levy an

---

3. KRS 68.180, which was enacted in 1960, authorizes counties with populations of 300,000 or more to levy occupational license taxes at a rate not to exceed 1.25%.

4. 1974 Ky. Acts ch. 113 § 1.

5. 1978 Ky. Acts ch. 268 § 1.

6. 1986 Ky. Acts ch. 131 § 1.

7. 1972 Ky. Acts ch. 384 § 1. Although most of the original "home rule" statute was subsequently held unconstitutional as a delegation of powers not enumerated in Section 181 of the Constitution, subsection (2) was upheld as valid. *Fiscal Court of Jefferson County v. City of Louisville,* Ky., 559 S.W.2d 478 (1977).

occupational license fee. Though agreeing with the circuit court that KRS 68.197 had no application to such counties, we held, however, that KRS 67.083(2) "expressly relates to a delegation of taxation authority to 'any county' without exception." *Burke, supra,* at 27. It was argued in *Burke* that the 1986 amendment of KRS 68.197 was, in fact, a reenactment of that statute with an inferential legislative intent to withhold the power to levy occupational license fees from counties of less than 30,-000. In other words, if the legislature had intended to grant such counties the power to levy occupational license fees, it would have said so when it "readopted" the specific statute relating to such fees rather than in the more general "home rule" statute. Rejecting that argument, Justice Wintersheimer wrote for a unanimous Court:

> KRS 68.197 does not apply to counties of less than 30,000. It relates only to counties of 30,000 or more. Any amendments to that statute have no effect on the authority granted to other counties pursuant to KRS 67.083. If the legislature intended to withhold authority from other counties, it would have been necessary to amend KRS 67.083 and not just KRS 68.197.

*Burke, supra,* at 28.

It is clear from that unambiguous passage that the 1978 and 1986 amendments of KRS 68.197 did not restrict the authority of a county with a population of less than 30,000 to levy an occupational license fee under KRS 67.083(2).

### III. CONSTITUTIONAL ISSUES.

■ The Johnson County ordinance does not constitute an arbitrary exercise of power, thus does not violate Section 2 of our Constitution. The fact that Appellants are being subjected to two taxes on the same privilege is not *ipso facto* "arbitrariness." In fact, as pointed out in *City of Lexington v. Motel Developers, Inc.,* Ky., 465 S.W.2d 253, 256 (1971), the delegates to the 1890 Constitutional Convention re-

jected a proposal to include a specific prohibition against double taxation in Section 181. *Proceedings and Debates of the Constitutional Convention of 1890,* Vol. 2, at 2372–73, 2793–95. Section 171 of our Constitution requires that taxes "shall be uniform upon all property of the same class subject to taxation within the territorial limits of the authority levying the tax." What this means in the context of a license fee is that a taxing authority cannot single out a particular entity for special licensing and/or require that entity to bear a heavier burden than other entities are required to bear. *City of Erlanger v. KSL Realty Corp., Inc.,* Ky., 819 S.W.2d 707, 708 (1991); *Jahr v. City of Radcliff,* Ky., 503 S.W.2d 743 (1973); *City of Lexington v. Motel Developers, Inc., supra.* Neither of those scenarios exist here. Johnson County's occupational license fee applies equally to every employed or self-employed person within its territorial limits.

■ In *Jahr v. City of Radcliff* and *City of Lexington v. Motel Developers, Inc.,* both *supra,* the offended taxpayers were taxed twice for the same privilege *by the same taxing authority.* The absence of uniformity perceived by Appellant in this case arises from the fact that he is being taxed for the same privilege by two different taxing authorities pursuant to two different enabling statutes. That does not mean that either taxing authority is acting arbitrarily. Each is simply imposing an occupational license fee which each has been authorized by statute to impose. Nor does the Johnson Fiscal Court's refusal to allow Appellant to credit his city fee against his county fee constitute arbitrariness. To allow such a credit would mean that those paying the city fee would pay a lesser county fee (or no county fee at all) than is being paid by other citizens of Johnson County. Thus viewed, the credit, itself, might violate the uniformity requirement of Section 171. The fact that KRS 68.197(4) mandates a credit in counties with a population of 30,000 or more is immaterial to Appellant's Section 2 argu-

ment, since KRS 68.197(4) does not apply to Johnson County. *Casey County Fiscal Court v. Burke, supra.*

■ Closely related to Appellant's claim of arbitrariness is his claim that KRS 68.197(4), KRS 67.083(2) and the Johnson County ordinance violate his right to equal protection under the law, since he, as a citizen of a county having a population of less than 30,000, is denied a tax credit which is granted to citizens of counties having populations of 30,000 or more. However, legislative bodies are allowed greater freedom in establishing classifications for tax purposes than in any other area of legislation. *Madden v. Kentucky*, 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590 (1940). Since no fundamental right is at stake here and taxpayers as a group are not a "suspect classification," the statutes and the ordinance at issue in this case are not subjected to "strict scrutiny," but are analyzed for equal protection purposes only to determine if there is a "rational basis" for the classification. *General Motors Corp. v. Tracy*, 519 U.S. 278, 311, 117 S.Ct. 811, 830, 136 L.Ed.2d 761 (1997). The law of Kentucky is the same. "[A] legislative body may not, *without some rational basis*, select a certain type of business enterprise and impose upon it a substantially heavier tax than that imposed upon other businesses which fall within the same general classification." *City of Lexington v. Motel Developers, Inc., supra*, at 257 (emphasis added).

■ Under rational basis analysis, a legislative body is not required to articulate the purpose or rationale supporting its classification. *Nordlinger v. Hahn*, 505 U.S. 1, 15, 112 S.Ct. 2326, 2334, 120 L.Ed.2d 1 (1992). Rather, a classification "must be upheld against equal protection challenge if there is *any reasonably conceivable state of facts* that could provide a rational basis for the classification." *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993) (emphasis added). The Johnson Circuit Court found that a rational basis for not requiring that a city occupational license fee be credited against a similar county fee in counties with populations of less than 30,000 is that such counties typically have only one major city in which most or all of its businesses and professions are located; thus, to mandate a credit in those counties would essentially nullify the county's power to tax. We, too, view this as a "reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* Thus, the Johnson County ordinance does not violate the Equal Protection Clauses of the United States and/or Kentucky Constitutions.

■ Finally, neither the enabling statute nor the ordinance enacted pursuant thereto constitutes local or special legislation in violation of Section 59(fifteenth) of the Kentucky Constitution. KRS 67.083(2) applies to " 'any county' without exception," *Casey County Fiscal Court v. Burke, supra*, at 27; and Johnson County's occupational license fee applies to every employed or self-employed entity in that county.

Accordingly, the judgment of the Johnson Circuit Court and the opinion of the Court of Appeals are both affirmed.

LAMBERT, C.J.; GRAVES, JOHNSTONE, KELLER and WINTERSHEIMER, JJ., concur.

KELLER, J., also files a separate concurring opinion in which GRAVES and JOHNSTONE, JJ., join.

STUMBO, J., dissents by separate opinion.

KELLER, Justice, concurring.

While I agree with the majority's conclusion regarding the constitutionality of the City of Paintsville's occupational license tax and the General Assembly's legislative enactments which delegate taxation power to cities and counties, I write separately to express my opinion that Preston did not follow the notification procedures outlined in Kentucky's Declaratory Judgments Act by failing to notify the Attorney General when he sought appellate review of the

Johnson Circuit Court ruling. Accordingly, while I agree with the majority's decision to address the merits of Preston's claim because of the significance of this issue, I believe it is important to note that either this Court or the Court of Appeals could properly have declined to review this issue because of Preston's failure to follow the notice requirements of KRS 418.075(2).

KRS 418.075 requires that the Attorney General be notified in cases such as the one before us where the plaintiff seeks declaratory relief:

> When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding.
>
> (1) In any proceeding which involves the validity of a statute, the Attorney General of the state shall, before judgment is entered, be served with a copy of the petition, and shall be entitled to be heard, and if the ordinance or franchise is alleged to be unconstitutional, the Attorney General of the state shall also be served with a copy of the petition and be entitled to be heard.
>
> *(2) In any appeal to the Kentucky Court of Appeals or Supreme Court or the federal appellate courts in any forum which involves the constitutional validity of a statute, the Attorney General shall, before the filing of the appellant's brief, be served with a copy of the pleading, paper, or other documents which initiate the appeal in the appellate forum. This notice shall specify the challenged statute and the nature of the alleged constitutional defect.*
>
> (3) The Attorney General shall notify the Legislative Research Commission of:
>
> (a) The receipt of a petition and the nature of any proceedings involving the validity of a statute; and
>
> (b) The entering of a final judgment in those proceedings, if the Attorney General is a party to that action.[1]

Until July 15, 1996, KRS 418.075 required only that the Attorney General be served with a copy of the petition filed in the trial court, and this requirement is now codified at KRS 418.075(1). The 1996 General Assembly, however, added the language now codified at KRS 418.075(2).[2]

Preston complied with the KRS 418.075(1) notice requirement, but did not serve upon the Attorney General a copy of the notice of appeal or motion for discretionary review as required by KRS 418.075(2).

Although Preston purports to challenge the validity of a Paintsville taxation ordinance, his argument quickly blossoms beyond its initial label into a constitutional criticism of Kentucky's statutory taxation scheme. The General Assembly unquestionably granted Paintsville the power to levy an occupational tax in KRS 92.281. Preston's constitutional challenge argues that KRS 68.197(4) and KRS 67.083(2) violate his right to equal protection under the law, since he, as a citizen of a county having a population of less than 30,000, is denied a tax credit which is granted to citizens of counties having populations of 30,000 or more. Preston thus argues against the validity of the Paintsville ordinance because the statutory grants of authority under which Paintsville enacted the ordinance are arbitrary and unconstitutional. As Preston's argument against the ordinance is inexorably intertwined with his constitutional objections to the General Assembly's delegations of taxation power, the issue on this appeal certainly "involves the constitutional validity of a statute" and Preston's decision to seek appellate review of the decision of the Johnson Circuit Court triggers the notice requirement within KRS 418.075(2).

Although this Court has not yet had an opportunity to address the effect of a failure to abide by the procedural notice requirements of this subsection, we have required strict compliance with respect to the other requirements of KRS 418.075.

1. KRS 418.075 (emphasis added).

2. 1996 Ky. Acts, ch. 202, § 2 (effective July 15, 1996).

In *Maney v. Mary Chiles Hospital,*[3] we recognized the important policy considerations supporting this requirement[4] and held: "It is our view that KRS 418.075 is mandatory and that strict enforcement of the statute will eliminate the procedural uncertainty."[5] In *Adventist Health Systems v. Trude,*[6] this Court relied upon *Maney* and declined to consider a constitutional issue on appeal because of the litigant's failure to abide by the notice requirements of KRS 418.075:

Dr. Peasley has argued that the provisions of KRS 311.377 violate the Kentucky Constitution. However, Dr. Peasley failed to give notice to the Attorney General of the pendency of his constitutional challenge in violation of KRS 418.075 and Civil Rule 24.03 in either the Court of Appeals or this Court. Since the original action was filed in the Court of Appeals, it is considered the "trial court" for the purpose of applying the *procedural mandate* of *Maney v. Mary Chiles Hosp.* In *Maney,* we held that the requirements of KRS 418.075 are mandatory in order for a court to consider the constitutionality of a statute and that strict enforcement of the statute will eliminate procedural uncertainty. Accordingly, we decline to consider that issue.[7]

I see no reason for us to interpret KRS 418.075(2) differently from KRS 418.075(1). The General Assembly has made a policy decision that the Attorney General be informed when litigants in declaratory judgment actions seek further appellate review, and this Court may enforce this requirement by declining to consider constitutional issues presented without proper notice. While the Attorney General may exercise discretion to intervene only in those cases involving questions of statewide concern, the full extent of a constitutional claim may not be apparent from the face of a petition. In this case, a purported challenge to a local ordinance actually questions the constitutionality of a number of statutes delegating taxation power to cities and counties. KRS 418.075(2) allows the office of the Attorney General an opportunity to reassess, with more complete knowledge of the issues involved on appeal, its prior determination regarding involvement in a lawsuit. If, after reviewing a notice of appeal, the office of the Attorney General wishes to represent the interests of the citizens of Kentucky, it may seek to file a brief as amicus curiae.[8] As Preston failed to meet the notice requirements of KRS 418.075(2), either this Court or the Court of Appeals could have dismissed this appeal and declined to address the issue involved.

As stated previously, I agree with the majority's decision to address the merits of the constitutional issue in this case, and I believe counsel for the appellee in this case aptly defended the constitutionality of both the Paintsville ordinance and the General Assembly's taxation delegation statutes. I write separately in concurrence primarily to remind the bench and bar of the 1996 amendment to KRS 418.075, and to suggest that future failures to comply with the

3. Ky., 785 S.W.2d 480 (1990).

4. *See, Id.* at 481:

[W]e are convinced that there is a compelling public purpose to be served by the notification rule. The language of the statute and rule evinces a strong public policy in favor of notification to the Attorney General whenever the constitutionality of a statute is placed in issue . . . .
Among the purposes underlying this statute is the right of the people, by the chief law officer, to be heard on matters affecting the validity of duly enacted statutes. KRS 15.020. Likewise, the prevention of collusive, non-adversarial proceedings between or among litigants which might result in the invalidation of state law is a matter of public interest. It is in the interest of the people to afford the Attorney General an opportunity to participate on their behalf, whether it is to argue for or against the validity of a statute.

5. *Id.* at 482.

6. Ky., 880 S.W.2d 539 (1994).

7. *Id.* at 542 (citations deleted and emphasis added).

8. *See* CR 76.12(7).

notice requirement in KRS 418.075(2) may bar review of constitutional challenges to Kentucky statutes.

GRAVES and JOHNSTONE, JJ., join this concurring opinion.

STUMBO, Justice, dissenting.

I respectfully dissent from the majority opinion and would hold the ordinance to be unconstitutional as it creates an irrational and arbitrary classification among counties having a population greater than 30,000 versus those with fewer than 30,000 as to their taxation of citizens similarly situated. In counties having a population of 30,000 or more plus a city, citizens living in the city are entitled to an offset on their county occupational tax bill for the occupational tax paid to that city. However, in counties having a population of fewer than 30,000 plus a city, citizens living in the city have no entitlement to such an offset. There simply is no rational basis for such a distinction.

Both the statutory provisions and case law on point dictates that this ordinance be held unconstitutional. KRS 68.197, as enacted in 1966, granted counties with a population of 30,000 or more the power to impose an occupational tax at a maximum of one percent (1%). Subsection three provided, in precatory language, that where a city located in such a county also had an occupational tax, the city and county "may" reach an agreement to allow a credit for city tax paid as an offset against county tax owed. Subsection four was later enacted to amend that precatory language, substituting a mandatory provision that after July 15, 1986, city occupational taxpayers became entitled to such a credit against a county occupational tax.

Appellant correctly points out that counties with populations of fewer than 30,000 were granted that power to assess an occupational tax not by virtue of statutory enactment but by interpretation of the existing statute by case law—namely, *Casey County Fiscal Court v. Burke*, Ky., 743 S.W.2d 26 (1988). It therefore follows as a logical conclusion as well as a constitution-al necessity that this Court extend the same reasoning (by corollary to the statutory enactment of § 4 of KRS 68.197) to permit taxpayers of cities located in counties of fewer that 30,000 to offset city occupational taxes against the county counterpart.

I would, therefore, hold the ordinance at issue to be unconstitutional as violative of § 2 and 3 of the Constitution of Kentucky and of § 1 of the 14th Amendment to the Constitution of the United States.