**JEFFERSON COUNTY, Kentucky, Appellant,**

v.

**ALLSTATE INSURANCE COMPANY; Kentucky Insurance Arbitration Association; Kentucky Department of Insurance; and George Nichols, III, Appellees.**

**No. 1999–CA–003085–MR.**

Court of Appeals of Kentucky.

March 16, 2001.

Discretionary Review Denied
by Supreme Court March 13, 2002.

I.G. Spencer, Jr., Louisville, for Appellant.

Robert E. Barnett, for Allstate Ins. Co, Patricia A. Abell, for Ky Ins. Arbitration Assoc., Louisville, Julie Mix McPeak, for Dept. of Ins., Frankfort.

Before HUDDLESTON, JOHNSON and SCHRODER, Judges.

*OPINION*

JOHNSON, Judge.

■ Jefferson County, Kentucky has appealed from an order granting summary judgment in favor of Allstate Insurance Company and the Kentucky Insurance Arbitration Association. We have concluded that even though Jefferson County had chosen to no longer be an "obligated governmental entity" under the Motor Vehicle Reparations Act before Allstate filed its application for arbitration, the Kentucky Insurance Arbitration Association retained jurisdiction over Allstate's claim for repayment for basic reparation benefits based on a claim that arose while Jefferson County was still an obligated government entity. Hence, we affirm.

On July 23, 1996, after Jefferson County opted to become an "obligated government entity" under the Motor Vehicle Reparations Act (MVRA), it sent a formal written notice to the Kentucky Department of Insurance, stating:

> Jefferson County Fiscal Count has elected to become an obligated government entity pursuant to KRS [1] 304.39–040[sic] and 806 KAR [2] 39:040 and thereby become obligated to pay basic reparation benefits.

On May 23, 1996, two months prior to Jefferson County's notification to the De-

---

1. Kentucky Revised Statutes.

2. Kentucky Administrative Regulations.

partment of Insurance that it intended to become an "obligated government", the Department of Insurance had written to Jefferson County to make the County aware of the obligations it would be assuming: "As provided in 806 KAR 39:050 (Section 2), applicants are required to pay *both* BRB's and tort liabilities" [emphasis original].

On August 10, 1997, Marcia Brown was involved in a motor vehicle accident with an employee of Jefferson County. As a result of the injuries Brown sustained, Allstate, her insurer, paid her basic reparations benefits (BRB's). The initial payment of BRB's was made by Allstate on August 22, 1997, and payments continued through succeeding months, with the final payment of BRB's occurring on August 17, 1998. At that time, Brown's $10,000.00 in BRB coverage with Allstate was exhausted. Brown's accident and all BRB payments made by Allstate to Brown, occurred during the time period in which Jefferson County was an "obligated government entity."

On January 14, 1999, the County sent a notice to the Department of Insurance advising it of its intention to withdraw from its status as an "obligated government entity." In its letter, Jefferson County stated that it was changing its status because it was unwilling to continue as a member of the Kentucky Insurance Arbitration Association, the statutory "mechanism for the reimbursement, among reparations obligers [sic], of losses paid as basic or added reparations benefits, *based solely on the law of torts* without regard to subsections (1), (2) and (3) of KRS 304.39–060" [emphasis original].

On February 9, 1999, the Department of Insurance responded to the County and advised it that its decision to terminate its status as an "obligated government entity" would only be effective with respect to future claims:

It will be necessary to have on file a copy of the Jefferson County Fiscal Court resolution to this effect. The County's election in this regard will be deemed effective as of the date it is received in our offices. However, please note that the election to withdraw is effective only as to future claims; any claims still open as of the date the election is received will still have to be settled or closed based on the legal provisions by which the County was bound when it elected to remain an "obligated government." We would appreciate receiving periodic updates as to the resolution of any current outstanding claims, until such time as all claims are closed.

On February 11, 1999, Jefferson County sent the Department of Insurance a certified copy of its resolution directing its chief financial officer "to notify, in writing, the Kentucky Department of Insurance of Jefferson County Fiscal Court's intention to be a governmental unit as permitted under 806 KAR 39:050(12) and no longer be an obligated government unit." In reply to the Department of Insurance's request to be notified and updated on pending claims, Jefferson County stated:

Nor do we deem it feasible to provide the Department of Insurance with a roster of claims made against Jefferson County and an "update" of dispositions. It should suffice to state that all claims for no fault benefits will be treated in the manner as determined to be appropriate in point of time. In reality, I do not believe any such claims are pending presently.

On February 18, 1999, Jefferson County sent a letter to the Kentucky Insurance Arbitration Association indicating that it was withdrawing as member of the Arbitration Association. On April 19, 1999,

Allstate filed an application for arbitration with the Arbitration Association to recover from Jefferson County the $10,000.00 in BRB payments it had paid to Brown. In response to a notice by the Arbitration Association that an arbitration hearing had been scheduled for July 12, 1999, Jefferson County, filed a complaint in the Jefferson Circuit Court on July 2, 1999, wherein it sought to enjoin the Arbitration Association from conducting the scheduled hearing. On July 8, 1999, a temporary restraining order was issued by the trial court prohibiting the Arbitration Association from conducting its scheduled hearing and restraining it from rendering any decision pending further order of the court.

On August 16, 1999, Allstate filed an answer to Jefferson County's complaint. On September 16, 1999, Allstate filed a motion to dissolve the restraining order of July 8, 1999, and a motion to dismiss Jefferson County's complaint for failure to state a claim upon which relief can be granted. On November 22, 1999, the trial court entered an order granting both of Allstate's motions. This appeal followed.

The statutory scheme that Jefferson County, as an "obligated government entity," opted to comply with provides at KRS 304.39–080, in relevant part, as follows:

(3) This Commonwealth, its political subdivisions, municipal corporations, and public agencies may continuously provide ... security for the payment of basic reparation benefits in accordance with this subtitle for injury arising from maintenance or use of motor vehicles owned by those entities and operated with their permission.

...

(8) An entity described in subsection (3) ... may provide security by lawfully obligating itself to pay basic reparation benefits in accordance with this subtitle[.]

The trial court found that Jefferson County's decision to become an "obligated government entity", obligated it to pay all claims that arose during the time frame between the effective date of its option, July 23, 1996, and January 14, 1999, the date that its withdrawal from the program became effective. The trial court held:

While this Court agrees with Jefferson County that it can decide whether or not it is an obligated government entity for prospective application, this Court believes it would be against the public policy behind the KMVRA to allow the County to withdraw its participation retrospectively. Thus, Jefferson County does have an obligation under KRS 304.39–080 for any occurrences prior to January 14, 1999.

■ Thus, the issue before this Court is whether our Legislature intended to grant a governmental entity, such as Jefferson County, the authority to terminate its status as an obligated governmental entity pursuant to KRS 304.39–080 so that it would no longer be responsible for a claim that arose during the period it was an obligated government entity if the claim had not been filed with the Kentucky Insurance Arbitration Association before the date of its withdrawal from the Arbitration Association. Obviously, the answer to this question depends upon what the Legislature intended when it enacted KRS 304.39–080.

■ When interpreting a statute, the function of the court is to construe the language so as to give effect to the intent of the Legislature.[3] In determining legislative intent, we may not look beyond the language of the statute unless the legislative intent is not discernible from the lan-

**3.** *Fiscal Court of Jefferson County v. City of* *Louisville,* Ky., 559 S.W.2d 478, 480 (1977).

guage used.[4] However, a court may not surmise as to what the Legislature intended but did not express.[5]

In 1996, when Jefferson County elected to waive sovereign immunity under KRS 304.39–080, it was required to become a member of the Arbitration Association.[6] Our Legislature exercised its authority in setting guidelines and regulations as to the formation of and membership in the Arbitration Association.[7] While it is conceded that the applicable statutes and regula-

4. *Princess Manufacturing Co. v. Jarrell*, Ky., 465 S.W.2d 45, 48 (1971).

5. *Kentucky Ass'n of Chiropractors, Inc., v. Jefferson County Medical Society*, Ky., 549 S.W.2d 817, 821 (1977).

6. 806 KAR 39:040(4) states: "Obligated governments who have not acquired a contract of insurance may have rights and duties under KRS 304.39–290 and should make the appropriate contacts with the Kentucky Arbitration Association in order that they may protect such rights and duties."

7. KRS 304.39–290 provides in relevant part:
   (1) There is created a nonprofit unincorporated legal entity to be known as the Kentucky Insurance Arbitration Association to provide a mechanism for the reimbursement, among reparation obligors of losses paid as basic or added reparation benefits, based solely on the law of torts without regard to subsections (1), (2), and (3) of KRS 304.39–060.
   (2) All basic reparation obligors shall be and remain members of the association as a condition of their authority to transact business in this Commonwealth.
   (3) The association shall perform its functions under a plan of operation established and approved under subsection (5) and shall exercise its powers through a board of directors established under subsection (4) hereof.
   (4) The board of directors of the association shall consist of not less than five (5) nor more than ten (10) persons serving terms as established in the plan of operation. They shall be selected by member obligors subject to the approval of the commissioner. If no members have been selected and approved prior to July 1, 1974, the commissioner shall appoint the initial members of the board. In approving selections to the board, the commissioner shall consider, among other things, whether all member obligors are fairly represented.
   Each member of the board shall designate qualified experienced claimspersons from the member's company, who upon approval by the commissioner, may serve as his alternates for the purpose of claims arbitration.
   (5) The association shall submit to the commissioner a **plan of operation** and any amendments thereto necessary, or suitable to assure the fair, reasonable, and equitable administration of the association. The plan shall become effective upon approval in writing by the commission [emphasis added]:
   (a) All reparation obligors shall comply with the provisions of the plan of operation;
   (b) The plan of operation shall:
   1. Establish procedures whereby all the powers and duties of the association will be performed;
   2. Establish minimum requirements for the initial submission of a case for reimbursement or arbitration;
   3. Establish minimum requirements beneath which reimbursements shall not be made in order that there be fair allocation of significant losses and the elimination of unnecessary costs in the reimbursement mechanism;
   4. Encourage voluntary reimbursement procedures between reparation obligors so that resort to arbitration shall be as infrequent as possible;
   5. Recognize that fair allocation of loss between commercial and noncommercial motor vehicles may require different minimum requirements than when the loss is between two (2) or more noncommercial vehicles;
   6. Establish regular places and times for meetings;
   7. Establish procedures for records to be maintained on all cases presented for arbitration and dispositions thereof;
   8. Establish procedures for compensation to reparation obligors for travel related expense and the fair value of the time devoted by their employees as a director or alternate in performance of duties for the association;

tions do not specifically address the issue before us, we believe that the plan of operation provides guidance. The plan of operation was promulgated pursuant to Chapter 385 of the 1974 Acts of the General Assembly and became effective pursuant to KRS 304.39–290. According to the plan, under Article 4(c) entitled "Operations":

> A claim may be submitted to arbitration not later than two (2) years after the injury or the death, or the last basic reparation payment made by any reparation obligor, or the settlement of a claim or claims arising out of the same accident, occurrence, or insured event, whichever later occurs.

It should be noted that the plan of operation's claim provision is without any limitation as to membership in the Arbitration Association. Thus, we cannot accept Jefferson County's argument that its decision to remove itself as a member of the Arbitration Association has any legal significance in regard to Allstate's claim. The accident involving the Jefferson County employee occurred on August 10, 1997, and the final BRB payment was made to Brown by Allstate on August 17, 1998. On April 19, 1999, Allstate filed an application for arbitration with the Arbitration Association seeking reimbursement for the BRB payments it made to Brown. Hence, under the terms of the plan of operation, Allstate filed its application for arbitration in a timely manner.

Jefferson County relies upon a statement from American Jurisprudence[8] to support its claim that it is not required to pay Allstate's subrogation claim:

> 9. Establish procedures for adequately and equitably financing the cost of the association among members; and
> 10. Contain additional provisions necessary or proper for execution of the powers and duties of the association.
> (6) The association shall be subject to examination and regulation by the commissioner[.]

After the legislature enacts a statute giving the consent of the state to the bringing of suits against it, it may at any time it thinks proper withdraw that consent and thus deny the right of a suitor to maintain an action against the state, or it may change the condition under which it will permit the state to be sued. It may withdraw the consent or change the conditions and requirements after a claim against the state arises, and make it effective as to that claim, and even after suit is instituted on a claim the state may withdraw its consent or impose different conditions, thus causing the abatement of the pending suit. A change in the conditions upon which the consent of the state to suits against it may be invoked, or the withdrawal of that consent, does not, although made effective as to existing claims, impair the obligation of contracts [footnotes omitted].

We have considered the above statement of the law and the cases cited therein, including *University of Kentucky v. Guynn*.[9] In *Guynn*, the Board of Claims granted an award of $10,000.00 even though at the time of the injury recovery had been limited to $5,000.00. The appellants argued "that whatever rights the claimant had were *vested* as of the time the claim accrued, and the 1958 amendment to the law [could not] be construed retroactively to increase the amount of the allowable recovery."[10] In holding that the amended version of the statute was controlling, the Court of Appeals stated:

**8.** 72 Am.Jur.2d *States* § 125, page 514 (1974).

**9.** Ky., 372 S.W.2d 414 (1963).

**10.** *Id.* at 416.

The Board of Claims Act does not create causes of action against the Commonwealth. Its effect is to waive the defense of sovereign immunity by providing a remedy for a particular character of claim. In prescribing this procedure the legislature was acting under section 231 of the Kentucky Constitution, which authorizes the General Assembly to direct the manner and in what courts suits may be brought against the Commonwealth. As a matter of grace, such a remedy may be granted, withdrawn or restricted at the will of the legislature. In its discretion it may fix or alter the amount recoverable [citations omitted].

At *the time of this accident* Donna Mae Guynn had no assertable claim for damages against the Commonwealth except to the extent the legislature had granted a remedy. She had no vested right to sue the State at all, and at least until proceedings were commenced the conditions upon which sovereign immunity would be waived could be changed either for her benefit or to her detriment. At *the time she filed her claim* she had no remedy except the one *then* existing, with its fixed limit of recovery. The date her potential cause of action accrued had no relevancy to the extent of the State's liability (except to start the running of a limitation period). When the claim was filed the Commonwealth had consented to a justiciable liability in an amount not exceeding $10,000. The Board was authorized to award this maximum [emphases original].[11]

In the case *sub judice,* the Legislature established the procedure for filing an application for reimbursement of BRB's with the Arbitration Association. Jefferson County's argument that it may choose to opt in and to opt out of the statutory scheme covering an obligated government entity is not supported by *Guynn.* The Court's holding in *Guynn* clearly turned on the fact that the Legislature had exercised its discretion in changing the amount recoverable. Here, Jefferson County seeks to exercise discretion in opting out of coverage under the statutory scheme, when the statutory scheme did not grant the obligated government entity the authority to opt out of coverage. Rather, the Legislature created the Arbitration Association to cover the reimbursement of BRB's and it provided for the implementation of a plan of operation to cover reimbursement of claims. The Legislature has not enacted any change that would limit Allstate's right to recover reimbursement of its BRB payments; and we hold that the change in operation of the scheme that Jefferson County is attempting to make has not been authorized by the Legislature and such change is contrary to the Legislature's intent in enacting KRS 304.39–080. Since the Legislature gave the Commissioner broad powers to examine and approve a plan of operation,[12] we believe the plan of operation that the Commissioner approved must be viewed as reflecting the intention of the Legislature. Accordingly, since Allstate's application for arbitration against Jefferson County was timely filed, the Arbitration Association retained jurisdiction over Allstate's claim despite Jefferson County's attempt to opt out of participation.

The order of the Jefferson Circuit Court is affirmed.

ALL CONCUR.

11. *Id.*

12. KRS 304.39–290(5).